**In re Sidney Oliver GRINER and Peggy Joann Riley Griner, Debtors.**

**The Travelers Indemnity Company of Illinois, Inc. and Crawford & Company, Inc., Plaintiffs,**

v.

**Sidney O. Griner, Defendant.**

**Bankruptcy No. 98–13697–MAM–13. Adversary No. 99–1030.**

United States Bankruptcy Court, S.D. Alabama.

July 30, 1999.

John A. Lockett, Jr., Selma, Alabama, for debtors.

Michael Leo Hall, Birmingham, Alabama, for Travelers Indemnity Co., et al.

Jeffrey Hartley, Mobile, Alabama, for Chapter 13 Trustee.

## ORDER AND JUDGMENT DENYING COMPLAINT FOR PERMANENT INJUNCTION

MARGARET A. MAHONEY, Chief Judge.

This matter came before the Court on the trial of the complaint of The Travelers

Indemnity Company of Illinois, Inc. and Crawford & Company, Inc. for a permanent injunction. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the complaint of The Travelers Indemnity Company and Crawford & Company for a permanent injunction is denied.

## FACTS

Sidney and Peggy Griner filed for relief pursuant to chapter 13 of the Bankruptcy Code on October 15, 1998. Sidney Griner had filed a lawsuit on August 22, 1996 against The Travelers Insurance Company, Crawford & Company and other defendants (collectively referred to as "Travelers"). *Sidney O. Griner v. The Travelers Insurance Company, et al.,* CV–96–1608, Circuit Court for Montgomery County, Alabama. This suit was based on the alleged failure of Travelers to treat Sidney Griner's work related injury. The Griners indicated in their bankruptcy statement of affairs that they were a party in the state court suit. They did not list the state court suit in their bankruptcy schedules as their personal property, as an exempt asset, or in any other way. None of the defendants in the state court suit were creditors of the Griners at the time they filed their bankruptcy case.

The Griners' chapter 13 plan was confirmed on December 29, 1998. Under the plan, the Griners' unsecured creditors were to receive a dividend equaling approximately 1% of their claims over a five-year period.

Sidney Griner's state court suit was set for trial on March 1, 1999. On February 24, 1999, Travelers filed a complaint in this Court to permanently enjoin Sidney Griner from prosecuting his state court suit along with a motion for a preliminary injunction and temporary restraining order. This Court denied the motion of Travelers for a preliminary injunction and temporary restraining order. Sidney Griner's state court suit went to trial and on March 5, 1999, a jury found in his favor. They assessed $300,000 compensatory and $200,000 punitive damages against the defendants.

This Court held a trial on the complaint of Travelers for a permanent injunction on June 24, 1999. On that same date, the Griners filed amendments to their schedules and their chapter 13 plan. In Schedule B they listed the state court suit as their personal property with an unknown value and in Schedule C they elected to exempt the state court suit in an unknown amount. The Griners amended their chapter 13 plan to provide that their creditors may receive a greater dividend depending on the final outcome of the state court suit.

## LAW

To obtain a permanent injunction, the plaintiff must: (1) succeed on the merits of its claim; (2) show that the public interest will be served; (3) show that it will incur continuing irreparable harm without the protection of an injunction; and (4) show that the relative harm it would incur without the injunction outweighs any harm to the defendant. *Zardui–Quintana v. Richard,* 768 F.2d 1213 (11th Cir.1985) (involved a preliminary injunction); *Sierra Club v. U.S. Army Corps of Engineers,* 935 F.Supp. 1556, 1570 (S.D.Ala.1996) (standard for issuance of permanent injunction is essentially the same as that for issuance of preliminary injunction, except that plaintiff must show actual success on merits rather than mere likelihood of success). The crucial factor in this case is factor one: does Travelers succeed on the merits of its case. If the Court finds that Traveler's legal arguments are correct, then Travelers "succeeds on the merits of its claim." If factor one is met, the remaining three factors fall in line and Travelers is entitled to a permanent injunction. If factor one is not

met, then no permanent injunction is appropriate. Travelers provided two alternative bases for its claim. Both will be addressed below.

### A.

 Sidney Griner's prepetition lawsuit against Travelers is property of the Griners' bankruptcy estate. 11 U.S.C. § 541(a), *Miller v. Shallowford Community Hosp., Inc.* 767 F.2d 1556, 1559 (11th Cir.1985). Travelers argues that because the suit is property of the Griners' bankruptcy estate, only the chapter 13 trustee has standing to pursue it and Sidney Griner should therefore be permanently enjoined from further litigating the suit.

The cases are divided on whether a chapter 13 debtor has standing to sue or be sued. *See, Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 425 (N.D.Cal.1999) (citing decisions from various bankruptcy courts). For the reasons stated below, this Court holds that chapter 13 debtors have concurrent jurisdiction with the chapter 13 trustee to litigate claims such as Sidney Griner's suit. Travelers asserts that the Court should follow the Alabama case of *Cooks v. Jim Walter Homes, Inc.*, 695 So.2d 19 (Ala.Civ.App.1996). This Court concludes that the *Cooks* case, relying primarily upon cases dealing with chapter 7 debtors, is incorrect as to chapter 13 debtors and should not be applied to chapter 13 cases. *See, Cooks*, 695 So.2d at 21 (chapter 13 debtor does not have standing to pursue cause of action once it becomes part of the debtor's bankruptcy estate).[1]

Chapter 13 debtors are provided certain rights and powers to the exclusion of the chapter 13 trustee pursuant to 11 U.S.C. § 1303.[2] In general, these rights pertain to the use, sale and lease of property. Chapter 13 trustees are also given powers under the Bankruptcy Code in § 1302. Some of these powers are also exclusive. For example, the trustee must "be ac-

---

**1.** The *Cooks* case cites six decisions as a basis for its statement that "[W]hen a cause of action becomes part of the debtor's estate, the bankruptcy trustee steps into the shoes of the debtor for purposes of asserting or maintaining the debtor's cause of action." *Cooks*, 695 So.2d at 21 (cites omitted). Of the six cases, four are chapter 7 cases. The statement made is a correct statement of law for chapter 7 cases as explained in this opinion. The plaintiffs in the other two cases, *Fleet v. United States Consumer Council, Inc. (In re Fleet)*, 53 B.R. 833 (Bankr.E.D.Pa.1985) and *Richardson v. United Parcel Service*, 195 B.R. 737 (E.D.Mo.1996), were chapter 13 debtors.

*Fleet* involved a class action brought by chapter 13 debtors against a financial counseling company. The *Cooks* court cited this case for the proposition that a debtor's cause of action is part of the debtor's bankruptcy estate. *Cooks*, 695 So.2d at 21. The *Fleet* court's conclusion that the debtors' causes of action were part of their bankruptcy estates was the basis for the bankruptcy court to exercise "related to" jurisdiction over the debtors' class action lawsuit, not for determining whether the debtors' had standing. *Fleet*, 53 B.R. at 837–838. Debtors' standing to pursue their lawsuit was never challenged. Moreover, since the debtors were permitted to proceed with their lawsuit, *Fleet* actually contradicts *Cooks*.

*Richardson* involved an employment discrimination claim brought by a chapter 13 debtor. The district court stated that "only the trustee is authorized to pursue a cause of action." *Richardson*, 195 B.R. at 739. However, the court denied defendant's motion to dismiss, referred the case to the bankruptcy court and permitted the debtor to amend his complaint to join the trustee as a party. Thus, the ultimate conclusion in *Richardson* was correct, i.e., permitting the debtor's lawsuit to continue, although the court incorrectly stated that only the chapter 13 trustee could pursue the claim. Like in *Cooks*, the mistake in *Richardson* resulted from the court's reliance on chapter 7 cases. All six of the cases relied upon by *Richardson* in concluding that only the trustee is authorized to pursue the lawsuit were chapter 7 cases. *Id.* The decision in *Richardson* was further complicated by the debtor unnecessarily conceding that he lacked standing to pursue the action in his own name. *Id.* at 838.

**2.** Section 1303 of the Bankruptcy Code provides that, "[S]ubject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of the trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*) of this title." These sections deal with the use, sale and lease of property of the debtor's estate.

countable for all property received," and "make a final report and file a final account of the administration of the estate." The trustee also has the power to perform acts which debtors and creditors may also perform, i.e., appear and be heard at any hearing concerning valuation of property or confirmation or modification of a plan or ensure that the debtor makes plan payments timely. As is obvious, the list of powers in §§ 1302 and 1303 does not specifically enumerate all of the powers which might be necessary when a person is in bankruptcy for up to a five-year period. Gaps exist. Who can bring nonbankruptcy federal or state law suits against third parties? Who can defend these suits? Who should file tax returns? Who can avoid liens? Obviously, someone must perform these functions. What is to happen to items not specifically enumerated in sections 1302 or 1303?

■ There are several possible answers to this question. Either the trustee holds some or all powers not given to the debtor in § 1303; the debtor holds some or all of the powers not given to the trustee in section 1302; or the parties hold these powers concurrently. The Court concludes that the trustee and debtor concurrently hold the power to sue as to nonbankruptcy federal and state law claims such as Mr. Griner's suit.

This result fits the framework of chapter 13 bankruptcy very well. Chapter 13 is a hybrid of chapters 7 and 11. Chapter 13 is more like chapter 11 (the reorganization chapter used primarily by business debtors) than chapter 7 (the liquidation chapter of the Bankruptcy Code). Chapter 13 is available to individuals who earn a regular income. Debtors propose a plan by which they will repay some or all of their debts through regular payments to a chapter 13 trustee. The trustee pays the sums collected to creditors according to the plan for a period of up to five years. The trustee is not involved in the daily lives of the debtors. He or she does not take possession of debtors' nonexempt assets or

monitor ordinary course usage of assets. The trustee does not receive any of the debtors' earnings except what is paid to him or her as prescribed by the chapter 13 plan.

In chapter 11 cases, unless a trustee has been appointed by the court, there is no trustee. The debtor handles all of his or her own affairs. This includes use, sale or lease of all assets. In chapter 7, a trustee is automatically appointed in each case. The debtor relinquishes all authority over his or her nonexempt assets.

A chapter 7 trustee has one power which is specifically not given to a chapter 13 trustee. Under 11 U.S.C. § 704($l$), a chapter 7 trustee "shall collect and reduce to money property of the estate." "Property of the estate" is all nonexempt assets in which the debtor had an interest before bankruptcy, such as a cause of action for a work related injury. 11 U.S.C. § 541. This power therefore compels a chapter 7 trustee to take over all nonexempt lawsuits of the debtor.

In a chapter 13 case, unless otherwise specifically provided by the debtors' plan, a debtor remains in possession of all of his or her assets pre- and postconfirmation. 11 U.S.C. § 1306(b). This is in contrast to chapter 7 cases where the trustee "collects (takes control of) and reduces to money" all nonexempt assets. Sidney and Peggy Griner never gave up possession of the claim against Travelers. Chapter 11 cases (without an appointed trustee) operate similarly. Debtors control their assets preconfirmation. *See, e.g.,* 11 U.S.C. § 363. Section 1141(b) vests all of a debtor's property in the debtor after a chapter 11 plan is confirmed. However, the Bankruptcy Code did not make chapter 13 cases exactly like chapter 11 cases. Section 1107 gives a chapter 11 debtor the powers of a chapter 7 trustee, including the power to "collect and reduce to money the property of the estate." There is no parallel provision in chapter 13. As discussed above, the Code is unclear about who is to collect the assets and liquidate them if

necessary in chapter 13. Under 11 U.S.C. § 323(b) any trustee in any chapter has the capacity to sue and be sued. It could be argued that the fact that only a chapter 13 trustee is given the power to sue explicitly and Congress knew how to give such power to chapter 13 debtors, as the existence of § 1107 indicates, it did not do so. However, the legislative history of § 323 states the contrary. It states that § 323 was intended to grant

> the trustee the capacity to sue and be sued. If the debtor remains in possession in a chapter 11 case, section 1107 gives the debtor in possession these rights of the trustee: the debtor in possession becomes the representative of the estate, and may sue and be sued. The same applies in a chapter 13 case.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 326 (1977) U.S.Code Cong. & Admin. News 1977 at pp. 5787, 6283. The legislative history to § 1303 is similar. It states that § 1303 "does not imply that the debtor does not also possess other powers concurrently with the trustee. For example, although section 1323[sic] is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued." 1214 Cong. Rec. H11, 106 (daily ed. Sept. 28, 1978). When the language of a federal statute is unclear, courts look to the intent of Congress for guidance. *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). When §§ 1303 and 323 are read together, this Court concludes either the trustee or debtor can bring suit in cases such as the Griners or both could be plaintiffs if appropriate or necessary.

Based on the foregoing, the Court finds that Sidney Griner has standing to continue his state court suit. Although the Bankruptcy Code is not explicit on the point, it is clear Congress intended to provide chapter 13 trustees and chapter 13 debtors with concurrent capacity to litigate prepetition nonbankruptcy law claims.[3]

---

**3.** This holding contrasts with the manner in which the Court has ruled in a seemingly similar situation. The Court has ruled that *only* chapter 13 trustees may exercise the avoiding powers in 11 U.S.C. §§ 544, 545, 547, 548, and 549. This ruling is not inconsistent with the holding in this case.

Sections 544, 545, 547, 548, and 549 state that a trustee "shall" or "may" avoid a transfer or a lien. The statutes give the trustee a clear duty or right. 5 COLLIER ON BANKRUPTCY ¶ 547.11[2] (15th ed.1998) (a debtor who is not a DIP cannot maintain an action to set aside his or her transfer under § 547). The Bankruptcy Code also specifically gives a debtor the clear and exclusive right to exercise avoiding powers under §§ 522(g)(1) and (h) subject to certain restrictions. Again, §§ 522(g)(1) and (h) use the terms "may." *In re Kildow,* 232 B.R. 686 (Bankr.S.D.Ohio 1999) (chapter 13 debtors may avoid transfers, but only subject to the restrictions contained in §§ 522(g)(1) and (h)). In this instance, it is clear that Congress empowered the trustee to take action as to a specific category of claims and then carved out a narrow niche for exclusive debtor action.

Chapter 5 rights arise only under the Bankruptcy Code. Outside of a bankruptcy case, the powers do not exist. These avoidance rights are created by the Bankruptcy Code as is the trustee's standing to assert the rights.

The right to pursue claims which arise under nonbankruptcy federal or state law and are property of a chapter 13 estate is not dealt with specifically in the Code. Section 323(b) gives a trustee the capacity to sue, but does not state it is exclusive. Section 1306 gives a chapter 13 debtor possession of all property of the estate and § 1303 gives the debtor the power to use, sell or lease the property. Neither party is specifically given the power which chapter 7 and 11 trustees and chapter 11 debtors are given: the power to collect and reduce to money property of the estate. *See,* 11 U.S.C. §§ 704(1) and 1107(a). The statutory framework is ambiguous.

What is clear is that the statutes do not divest the chapter 13 debtor of his or her right to prosecute claims except chapter 5 ones. Therefore, the debtor retains the claims under § 1306 and is able to pursue them under §§ 1302 and 1303. The legislative history also makes it clear the Congress intended chapter 13 debtors to be able to sue.

Thus, the difference in the holdings rests in the difference in the claims involved and their statutory treatment. Code created chapter 5 rights with Code created standing in a specific statute are to be prosecuted by the trustee in chapter 13 cases. Nonbankruptcy federal and state law claims can be prosecuted by the trustee or the debtor in chapter 13 cases because there is no specific statutory guidance. No provision specifically divests debt-

The functions of the chapter 13 trustee are basically administrative, e.g., review plans, advise the court on plans, and act as disbursing agent. *Freeman v. Eli Lilly Federal Credit Union (In re Freeman)*, 72 B.R. 850, 854 (Bankr.E.D.Va.1987). It would be an extreme burden in many instances to force chapter 13 trustees to prosecute prepetition claims of debtors unless additional personnel were added to prosecute or monitor the claims. If a trustee is unwilling or unable to pursue the claims, it would be unfair to deprive debtors' creditors from receiving the benefits of these claims.

### B.

■ Defendants also contend that the doctrine of judicial estoppel bars Sidney Griner from prosecuting or continuing the state court action. This doctrine precludes a party from assuming a position in a legal proceeding inconsistent with a position previously asserted. *Luna v. Dominion Bank of Middle Tennessee, Inc.*, 631 So.2d 917, 918 (Ala.1993).

### 1.

■ In *Luna*, the Supreme Court of Alabama stated that, "judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy contest, to estop the debtor from presenting the claim." *Id.* at 919. Luna was precluded from pursuing his state court suit because it arose prepetition and he failed to disclose it in his bankruptcy proceedings. Travelers contends that the *Luna* decision governs this case. The Court finds *Luna* distinguishable for the following reasons.

First, Luna brought claims against a creditor of his and related entities. Luna's claims were related to a prepetition claim held by the creditor which was discharged

in Luna's bankruptcy case prior to his filing suit in state court. If the creditor knew about Luna's claim against it, the creditor may have been able to offset the claims or take some other action in Luna's bankruptcy case that was not available because it was unaware that the bankruptcy estate included a claim against it. Travelers is not a creditor in the Griner's bankruptcy case. Travelers and all of the defendants in Sidney Griner's state court suit are not prejudiced by Griner's failure to list the suit against them as an asset. *See, Donato*, 230 B.R. 418 (judicial estoppel found not to bar debtor's lawsuit because defendant was not a creditor in debtor's case and debtor would not benefit by omission of suit from her schedules).

Second, the bankruptcy court relied on Luna's schedules in granting him a discharge. Prior to granting the discharge, the court was never made aware of Luna's claim against the creditor. Thus, the court's integrity was impinged by Luna's failure to list the suit as a prepetition asset. *Consolidated Stores, Inc. v. Gargis*, 686 So.2d 268, 274 (Ala.Civ.App.1996) (judicial estoppel serves to protect the integrity of the judicial proceedings). In this case, the Griners have not yet received a discharge and they amended their bankruptcy papers to include the state court suit. The initial omission of the suit did not impinge upon this Court's integrity.[4]

The fact that Luna, unlike the Griners, never amended his bankruptcy schedules and chapter 13 plan is also an important distinction. *See, Selma Foundry and Supply Co., Inc. v. Peoples Bank and Trust Co.*, 598 So.2d 844, 847 (Ala.1992) (debtor not judicially estopped from asserting a suit which was not included in its original disclosure statement since debtor listed the suit in an amended disclosure statement); *Chandler v. Samford Univer-*

ors of prepetition rights. The general, ambiguous language of the Code is insufficient to terminate debtors' standing to collect and reduce prepetition nonbankruptcy claims to money in chapter 13 cases.

4. The Court is specifically not addressing whether there are cases in which a bankruptcy case might be reopened after discharge to allow the pursuit of a prepetition claim.

*sity*, 35 F.Supp.2d 861 (N.D.Ala.1999) (court judicially estopped debtor from pursuing discrimination action in part because she deliberately manipulated the courts when she chose not to amend her schedules to reflect the action as an asset of her bankruptcy estate). The Griners' amendment corrects their initial mistake and makes any nonexempt amount recovered from the state court suit available for distribution to creditors. Their election to amend their schedule of exemptions to include an "unknown" portion of Mr. Griner's state court suit does not change the Court's conclusion. The Griners have the right to amend their schedule of exemptions "at any time before the case is closed." Fed.R.Bankr.P. 1009. True, such amendments are precluded if the debtors concealed the asset. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982). However, there is no evidence that the Griners attempted to conceal the suit. In fact, they listed it in their initial statement of affairs. *Id.* (debtors disclosed tax refund in initial filing and they therefore were permitted to amend schedules to claim tax refund as exempt).

Finally, Luna failed to indicate that he had a cause of action in *any* of his bankruptcy documents. *Luna*, 631 So.2d at 919. The Griners initially listed their suit against Travelers in their statement of affairs. This supports the conclusion that the Griners mistakenly omitted their suit from their bankruptcy schedules and did not intentionally conceal a possible asset from their creditors.

### 2.

 Travelers contends that whether the Griners attempted to conceal the lawsuit is irrelevant and the Griners should be judicially estopped merely because they were aware of the cause of action prior to filing bankruptcy and did not include it as an asset in their schedules. The Court finds that whether Alabama or federal common law governs, mere knowledge or awareness on the part of the debtor is not sufficient to find that judicial estoppel applies. Judicial estoppel requires an intent that the court accept the truth of the facts alleged coupled with the receipt of an advantage from the assertion, *Consolidated Stores, Inc.*, 686 So.2d at 274, 275 (Alabama law), or that the debtor obtains a benefit by deliberate manipulation. *Chandler v. Samford University*, 35 F.Supp.2d 861, 863 (N.D.Ala.1999) (federal law); *In re Daniel*, 205 B.R. 346, 348 (Bankr. N.D.Ga.1997) (judicial estoppel found not to preclude debtor's amendment because no evidence was presented that debtor intentionally or fraudulently concealed lawsuit). For the reasons mentioned above, especially because the Griners initially listed the suit in their statement of affairs, Travelers did not prove that the Griners intended to conceal Mr. Griner's state court suit or received a benefit from their initial omission of the suit. Consequently, Sidney Griner is not judicially estopped from continuing his state court suit.

### 3.

Travelers' position is overly harsh and inequitable as well. Everyone, except Travelers, loses under its theory. If a debtor fails to include assets on his schedules and later seeks to add them, the Bankruptcy Rules allow it "as a matter of course at any time before the case is closed." Fed.R.Bankr.P. 1009(a). A bankruptcy court has ample powers to punish debtors who wrongfully conceal assets, i.e., sanctions under Fed.R.Bankr.P. 9011, conversion of the case to chapter 7 (§ 1307(c)), revocation of discharge (§ 1328(e)), referral for criminal charges (18 U.S.C. § 152(1), (2), (3), (7)). Travelers position punishes the creditors of the nondisclosing debtor, not just the debtor. The better result is to allow the claim to be prosecuted and collected, order the funds paid toward claims filed in the case, and punish the debtor another way.

### CONCLUSION

Based on the foregoing, the Court finds: (1) the Griners have standing to pursue

their claims against Travelers because chapter 13 debtors and chapter 13 trustees have concurrent authority under the Bankruptcy Code to pursue claims of the debtor that arose prepetition; and (2) the Griners are not barred by the doctrine of judicial estoppel from proceeding with their state court suit against Travelers primarily because they amended their bankruptcy schedules and their chapter 13 plan to include the suit and they did not intend to conceal the suit.

THEREFORE, IT IS ORDERED AND ADJUDGED that the complaint of The Travelers Indemnity Company of Illinois, Inc. and Crawford & Company, Inc. requesting this Court to permanently enjoin Sidney O. Griner from prosecuting and pursuing his lawsuit against them is DENIED.