Maureen Nollie sued Jim Wilson Associates, Inc. ("Wilson"), on January 21, 1999, seeking to recover damages for injuries she claimed to have sustained while on certain premises owned and maintained by Wilson. Wilson moved the court for a summary judgment on August 16, 1999. The court entered a summary judgment in favor of Wilson on August 25, 1999. Nollie appeals.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
Viewed in a light most favorable to Nollie, the evidence indicates that on September 21, 1997, Nollie filed in the United States Bankruptcy Court for the Northern District of Alabama a voluntary bankruptcy petition under Chapter 13 of the United States Bankruptcy Code. On March 5, *Page 964 
1998, she slipped and fell while on premises owned and maintained by Wilson. Several months later, she contacted attorney Edward Eugene Mays about pursuing possible litigation against Wilson. Mays informed Nollie that cases like hers were "very difficult to win." Nollie was then referred by a friend to attorney Carole C. Smitherman, who suggested that Nollie see another attorney. Nollie stated in her affidavit that she could not recall the third attorney's name, but that he also informed her that her type of case was "difficult to win." Within a week of contacting this third attorney, Nollie received a letter from him informing her that he would not take her case. Nollie then contacted the lawyer-referral service of the Birmingham Bar Association and was given the name of her present attorney, Frank S. Buck; however, Nollie did not immediately contact Buck.
On September 25, 1998, Nollie filed a notice of conversion of her bankruptcy case from Chapter 13 to Chapter 7. On October 1, 1998, Nollie's bankruptcy attorney amended her bankruptcy schedule to add to the list of creditors Regional Paramedical SVCS-Hoover. This debt was incurred as a result of the incident made the basis of this lawsuit. On October 6, 1998, the Bankruptcy Court entered an order converting Nollie's bankruptcy case to Chapter 7 status. Nollie contacted Wilson and its insurance company and requested that she be reimbursed for her time lost from work because of the injuries she sustained. She received a letter from Wilson's insurance company on October 14, 1998, informing her that after reviewing the case it had determined that Wilson was not responsible for any loss incurred; however, the insurance company did offer to reimburse Nollie for her medical expenses.
After receiving the letter of October 14, 1998, from Wilson's insurance company, Nollie decided to have Buck review the letter. Nollie testified that she thought because she had obtained Buck's name through the Birmingham Bar Association he would be more responsive to her situation. She testified that she never made Buck aware of her pending bankruptcy petition and that she had not informed her bankruptcy attorney that she had discussed her potential personal-injury claim with other attorneys. At no time did Nollie include her potential personal-injury lawsuit as a potential asset in any of the documents executed during the bankruptcy proceedings. Nollie received a discharge in bankruptcy on January 20, 1999. This action was filed the next day.
Relying upon Luna v. Dominion Bank of Middle Tennessee,Inc., 631 So.2d 917 (Ala. 1993), Wilson argued in its summary-judgment motion that the doctrine of judicial estoppel applies to bar Nollie's personal-injury claim, because she failed to disclose the claim in the bankruptcy proceedings. Nollie argued in opposition to the motion for summary judgment that Wilson had failed to demonstrate how it was prejudiced by her failing to disclose the potential lawsuit. Additionally, Nollie argued that a question of fact existed as to whether she, acting as a reasonable person, would have known she had a cause of action against Wilson while her bankruptcy petition was pending.
In Luna, the debtor (Luna), a developer and businessman, was discharged from his debts under Chapter 7 of the Bankruptcy Code. Eighteen months after being discharged in the bankruptcy court, Luna sued Dominion Bank, alleging various theories of recovery on claims that had arisen before he had filed the bankruptcy petition. Luna listed Dominion Bank as a creditor in the bankruptcy proceeding; however, he failed to disclose his potential claim against Dominion Bank at any time *Page 965 
during the bankruptcy proceeding. Dominion Bank argued that Luna was judicially estopped from pursuing his claims because he had failed to disclose as potential assets his claims against the bank. Luna argued that the doctrine of judicial estoppel should not be applied to bar his claims because, he argued, he had been unaware of his claims against Dominion Bank until after his discharge in bankruptcy. Id.
In affirming a summary judgment entered in favor of Dominion Bank, our supreme court stated:
 "In applying the doctrine of judicial estoppel this Court considers the relationship between the litigant and the judicial system. The doctrine applies to preclude a party from assuming a position in a legal proceeding inconsistent with a position previously asserted. Further, it has been specifically held that a debtor in bankruptcy must disclose any litigation likely to arise in a nonbankruptcy contest.
". . . .
 "The doctrine of judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy contest, to estop the debtor from presenting the claim."
Id., at 918-19 (citations omitted). The court further stated that if the facts of the case were as Luna had claimed, then Luna, "acting as a reasonable person, would have known, when he filed his bankruptcy proceeding, that he had a claim against Dominion."Id., at 919.
In Jinright v. Paulk, 758 So.2d 553 (Ala. 2000), our supreme court recently addressed the issue of judicial estoppel and its application to bar a claim that was not disclosed during bankruptcy proceedings and that later was presented in a nonbankruptcy contest. Quoting from In re Griner, 240 B.R. 432
(Bankr.S.D.Ala. 1999), our supreme court gave a brief overview of bankruptcy law; a review that would be beneficial to the discussion of the present case:
 "`Chapter 13 is a hybrid of chapters 7 and 11. Chapter 13 is more like chapter 11 (the reorganization chapter used primarily by business debtors) than chapter 7 (the liquidation chapter of the Bankruptcy code). Chapter 13 is available to individuals who earn a regular income. Debtors propose a plan by which they will repay some or all of their debts through regular payments to a chapter 13 trustee. The trustee pays the sums collected to creditors according to the plan for a period of up to five years. The trustee is not involved in the daily lives of the debtors. He or she does not take possession of debtors' nonexempt assets or monitor ordinary course usage of assets. The trustee does not receive any of the debtors' earnings except what is paid to him or her as prescribed by the chapter 13 plan.
 "`In chapter 11 cases, unless a trustee has been appointed by the court, there is no trustee. The debtor handles all of his or her own affairs. This includes use, sale, or lease of all assets. In chapter 7, a trustee is automatically appointed in each case. The debtor relinquishes all authority over his or her nonexempt assets.
 "`A chapter 7 trustee has one power which is specifically not given to a chapter 13 trustee. Under 11 U.S.C. § 704(1), a chapter 7 trustee "shall collect and reduce to money property of the estate." "Property of the estate" is all nonexempt assets in which the debtor had an interest before bankruptcy, such as a cause of action for a work related injury. 11 U.S.C. § 541. This power therefore compels a chapter 7 trustee to *Page 966 
take over all nonexempt lawsuits of the debtor.
 "`In a chapter 13 case, unless otherwise specifically provided by the [debtor's] plan, a debtor remains in possession of all of his or her assets pre-and postconfirmation. 11 U.S.C. § 1306(b). This is in contrast to chapter 7 cases where the trustee "collects (takes control of) and reduces to money" all nonexempt assets. . . .'"
Jinright, 758 So.2d at 556, quoting Inre Griner, 240 B.R. at 436. In Jinright, the Jinrights entered into a contract with Paulk, as president of Option Builders, Inc., whereby Option Builders was to construct a house for the Jinrights. The Jinrights experienced some problems with the house after its construction, and in April 1996 they began negotiating with Paulk and Option Builders to have it repaired. In June 1996, the Jinrights filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code. The Jinrights did not disclose their potential claim against Paulk and Option Builders. In November 1996, the Jinrights sued Paulk and Option Builders for the alleged faulty construction of their house. The Jinrights informed the trustee of their pending lawsuit against Paulk and Option Builders on January 22, 1998, and informed the bankruptcy judge of the lawsuit during a hearing on February 10, 1998. Subsequently, Paulk and Option Builders moved for a summary judgment, arguing that the doctrine of judicial estoppel prevented the Jinrights from pursuing the lawsuit. The trial court entered a summary judgment in favor of Paulk and Option Builders on the grounds that the lawsuit was barred by the doctrine of judicial estoppel. Id.
The Jinrights argued on appeal that they had not asserted conflicting positions in their bankruptcy proceedings and the litigation against Paulk and Option Builders because they had amended their schedule of assets and had informed the bankruptcy judge of their pending lawsuit. On appeal, Paulk and Option Builders relied upon Luna, supra, arguing that the doctrine of judicial estoppel barred the Jinrights' lawsuit. Our supreme court, relying upon In re Griner, supra, distinguished the facts in Jinright from those in Luna, noting that the Jinrights had filed a bankruptcy petition under Chapter 13 and had not been discharged from their debts at the time they filed their lawsuit, whereas Luna had filed for bankruptcy protection under Chapter 7 and did not file his lawsuit until after he was discharged from his debts. Further, Luna failed to disclose his potential lawsuit as an asset at any time during his bankruptcy proceeding, whereas the Jinrights, although not initially, did eventually disclose to the bankruptcy court their potential lawsuit. Finally, the defendant in Luna's action was also a creditor of Luna's listed in the bankruptcy proceeding, whereas Paulk and Option Builders were not creditors of the Jinrights. Id.
In reversing the summary judgment entered in favor of Paulk and Option Builders, our supreme court stated:
 "We agree with the Griner court that a debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application of the doctrine of judicial estoppel. Other courts that recognize the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding require that the party seeking to apply the doctrine demonstrate (1) that the positions asserted by the party *Page 967 
against whom the estoppel is sought are in fact inconsistent, and (2) that the inconsistency would allow a party to benefit from the deliberate manipulation of the courts. Chandler [v. Samford University], 35 F. Supp.2d [861,] 863-64 [(N.D.Ala. 1999)]. See, also, Ryan Operations, G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996); In re Tippens, 221 B.R. 11 (Bankr.N.D.Ala. 1998). Factors such as the chapter under which the debtor sought bankruptcy protection, whether the debtor has been discharged in bankruptcy, and whether the debtor amended the bankruptcy schedules to include the omitted asset should be significant to an inquiry regarding whether to apply the doctrine of judicial estoppel to bar the debtor's claim. Furthermore, under this Court's decision in Porter [v. Jolley, 564 So.2d 434 (Ala. 1990),] and the United States bankruptcy court's decision in Griner, a defendant seeking to apply the doctrine must prove prejudice to the defendant."
Id., at 559 The court further held that the inquiry into whether the doctrine of judicial estoppel is applicable will raise some questions of fact, including "whether a debtor who is engaged in bankruptcy proceedings knew or should have known about claims or causes of action that should be disclosed as assets." Id., at 559 The supreme court cited with approval this court's opinion inUnderwood v. First Franklin Financial Corp., 710 So.2d 424
(Ala.Civ.App. 1997), in which we reversed a summary judgment entered on the basis of judicial estoppel, finding that a question of fact existed as to whether the plaintiff knew or should have known that she had causes of action against the defendants that she sued after she had been discharged in the bankruptcy court.
Reviewing the present case in light of Jinright, we note that Nollie had originally petitioned for bankruptcy protection under Chapter 13, but later converted her petition to a Chapter 7 proceeding, like the debtor in Luna. Also, Nollie, like the debtor in Luna, never disclosed the existence of a potential lawsuit as an asset in her bankruptcy proceeding. Additionally, like the debtor in Luna, Nollie did not file her lawsuit until after she had been discharged from her debts. These facts, viewed in light of the relevant factors set forth in Jinright, would suggest that the present case is akin to Luna and that the doctrine of judicial estoppel should be applied to bar Nollie's suit; however, we note one important distinction. The debtor inLuna had sued Dominion Bank — a party that he had named as a creditor in the bankruptcy proceeding. The court in Griner, also distinguishing the facts of that case from the facts in Luna, noted that "[i]f the creditor knew about Luna's claim against it, the creditor may have been able to offset the claims or take some other action in Luna's bankruptcy case that was not available because it was unaware that the bankruptcy estate included a claim against it." In re Griner, 240 B.R. at 438. The Griner court then noted that the defendants in the debtor's lawsuit were not creditors of the debtor and were not prejudiced by the debtor's failure to disclose the potential lawsuit against them as an asset.
Nollie, like the debtors in In re Griner and Jinright, has not sued someone that she also had listed as a creditor in the bankruptcy proceeding. In its motion for a summary judgment, Wilson seemed to argue that the doctrine of judicial estoppel applied to bar Nollie's action simply because she had failed to disclose a potential lawsuit as an asset during the bankruptcy proceeding. Our supreme court held in Jinright that mere knowledge of a potential lawsuit, without more, is insufficient to invoke the doctrine of judicial estoppel and *Page 968 
that a party seeking to apply the doctrine must prove that it was prejudiced by the debtor's failure to disclose the potential lawsuit as an asset. We conclude that Wilson has failed to show in any manner how it was prejudiced by Nollie's failure to disclose the potential lawsuit as an asset.
We further note that Nollie testified in her affidavit that she was 50 years old, had no legal training, and that the only post-secondary education that she has had is in the area of secretarial and clerical training. Nollie stated that after being turned away by several attorneys regarding her claim and after receiving the letter from Wilson's insurer denying liability she concluded that she did not have a lawsuit that could be considered an asset in her bankruptcy proceeding. Whether one knew or should have known about causes of action that should be disclosed as assets in bankruptcy proceedings are questions of fact to be decided by the trier of fact. Jinright, supra; Underwood, supra. We conclude that Nollie presented substantial evidence creating a question of fact as to whether she knew or should have known that she had a cause of action against Wilson that she should have disclosed during her bankruptcy proceeding.
Accordingly, the summary judgment entered in favor of Wilson is reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
Robertson, P.J., and Monroe and Thompson, JJ., concur.
Crawley, J., concurs in the result.