**In re Pamela G. LEWIS.**

**No. A97–70635–ADK.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 2, 2001.

James H. Howard, The Howard Law Firm, Tucker, GA, J.R. Gray, Tucker, GA, for debtor.

Jason H. Watson, Lisa Farmer, Bernard Taylor, Alston & Bird, LLP, Atlanta, GA, Rolfe M. Martin, Owen, Gleaton, Egan, Jones, et al., Atlanta, GA, for Wrongful Death Defendants:

Robert Trauner, Trauner, Cohen & Thomas, Atlanta, GA, Chapter 7 Trustee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court is the Motion of Pamela G. Lewis (hereinafter the "Debtor") to reopen her Chapter 7 case. After a hearing on July 25, 2001, the Court took the case under advisement. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction over it pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334. Based on the record in this case, the testimony of the Debtor at the hearing, and for cause shown, the Court's findings and conclusions are as follows.

### FINDINGS OF FACT

The Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on June 13, 1997. On August 22, 1997, the Chapter 7 Trustee filed his report of no distribution and on December 16, 1997, the Debtor received her discharge. On June 5, 2001, the Debtor filed a motion to reopen her case for the purpose of disclosing a pre-petition asset. According to the Debtor's motion, she seeks to reopen her case because she "has learned of a pre-petition wrongful death cause of action in which she has a partial interest" (Debtor's Motion to Reopen, June 5, 2001). The cause of action for wrongful death arises from the pre-petition death of the Debtor's spouse in September 1996. In August 1998, subsequent to the entry of discharge in the Debtor's case, the Debtor commenced an action for her spouse's alleged wrongful death in the State Court of Fulton County, Georgia against Sherman Hoover, M.D., Southeast Permanente Medical Group, Inc. and Kaiser Foundation Health Plan of Georgia, Inc., Linda Guydon, M.D., Scott Carroll,

M.D., and Atlanta Allergy Clinic, P.A. (the "Wrongful Death Defendants").

The Wrongful Death Defendants oppose the reopening of the Debtor's case. On May 4, 2001, the Wrongful Death Defendants filed a motion for summary judgment in the Debtor's state court action to bar the Debtor's claim on the grounds of "judicial estoppel." As part of their judicial estoppel defense, the Wrongful Death Defendants argue that the Debtor is barred from pursuing her claim because she has taken a position in her bankruptcy case (that she had no unliquidated pre-petition tort claim), inconsistent with the position taken in her state court case (that she has a pre-petition wrongful death claim). The Wrongful Death Defendants allege that the Debtor did not recently learn of the potential claim, but in fact, knew that she had a claim as early as September 1997 when her attorney sent a demand letter to the Wrongful Death Defendants.

On July 25, 2001, the Court held a hearing on the Debtor's motion to reopen. In addition to the issues raised by the parties in their briefs, the Court inquired into the issue of whether the Wrongful Death Defendants had standing to contest the reopening of the Debtor's bankruptcy case. Following the hearing, the Wrongful Death Defendants and the Debtor filed supplemental briefs as directed by the Court.

### CONCLUSIONS OF LAW

As a preliminary matter, the Court must determine whether the Wrongful Death Defendants have standing to appear in this bankruptcy matter and oppose the reopening of the Debtor's case. Standing is defined as "a party's right to make a legal claim or seek judicial enforcement of a duty or right." BLACK'S LAW DICTIONARY 1413 (7th ed.1999). A court may consider the issue of a party's standing *sua sponte*. *Bischoff v. Osceola County, Florida*, 222 F.3d 874 (11th Cir.2000). "[T]he question of standing is not subject to waiver.... The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

The United States Supreme Court has articulated a three-factor test for meeting the constitutional requirements of standing: 1) the party asserting standing must have suffered actual injury or threatened injury; 2) the injury must be fairly traceable to the conduct at issue; and 3) a demonstration must be made that the requested relief is likely to redress the injury. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *see also E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir.1990). Essentially, a party asserting standing must have a "personal stake in the outcome" of a case. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Unlike a traditional two-party lawsuit, determining whether a party has standing in a bankruptcy proceeding is a somewhat esoteric question. A bankruptcy proceeding is not about just the interests of a plaintiff and a defendant whereby one party alleges an injury caused by conduct of another party. A bankruptcy proceeding involves the rights and obligations of a debtor, creditors, and trustee, among others. Moreover, bankruptcy involves the administration of an estate's property and necessarily affects other parties rights and interests vis-a-vis that property. Thus, while the Wrongful Death Defendants have an "interest" in Debtor's bankruptcy case in a general sense, the Court must

determine whether their interest rises to a level which warrants their ability to appear and be heard in the bankruptcy case.

■■ Chapter 11 of the Bankruptcy Code refers to a party who may appear and be heard as a "party in interest." 11 U.S.C. § 1109(b). While the term is confined to Chapter 11, and this is a Chapter 7 proceeding, the Court finds guidance in its determination of the Wrongful Death Defendants standing by looking to the definition of the term and the interpretation of the term "party in interest." Section 1109(b) provides

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

Who may be a party in interest is nonexclusive. *See* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"). One court has noted that the "circumstances of the case determines who qualifies as a party in interest." *In re Koch,* 229 B.R. 78, 82 (Bankr.E.D.N.Y.1999) (*citing In re American Motor Club, Inc.,* 149 B.R. 317, 322 (Bankr.E.D.N.Y.1993)). In addition, courts have found that a party in interest is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 356 (10th Cir.1995); *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir.1993).

■■ Based on the circumstances of this case, the Court is persuaded that the Wrongful Death Defendants have standing to appear and be heard on the Debtor's motion to reopen her case. While the Wrongful Death Defendants are potentially indebted to the Debtor (or, perhaps, more appropriately, the Debtor's estate), this factor alone is not sufficient to create standing in this case. For example, had the Debtor properly disclosed her unliquidated tort claim at the time she filed her bankruptcy case, the Wrongful Death Defendants would not have had standing to move for dismissal of her case or object to her discharge. However, the *current* procedural posture of both the bankruptcy case and the state court case give the Wrongful Death Defendants standing to appear and be heard on the Debtor's motion to reopen because of the potential impact her motion has in both forums, and particularly because of the impact it may have on the continuation of the state court action. Having determined that the Wrongful Death Defendants have standing to raise their objection, the Court now turns to the Debtor's motion to reopen her case.

■■ Bankruptcy Rule 5010 states that a case may be reopened on motion of the debtor or other party in interest pursuant to Section 350(b) of the Bankruptcy Code. Section 350(b) of the Bankruptcy Code provides, "[A] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350. This court has broad discretion in determining whether to reopen a case under § 350(b). *See Faden v, Insurance Co. of N. Am. (In re Faden),* 96 F.3d 792, 796 (5th Cir.1996); *In re Bianucci,* 4 F.3d 526, 528 (7th Cir.1993); *In re McDaniel,* 217 B.R. 348, 352 (Bankr.N.D.Ga.1998). "The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case." *In re Koch,* 229 B.R. 78, 88 (Bankr.E.D.N.Y. 1999).

■ A newly discovered unadministered asset is a basis for reopening a bankruptcy case. A pre-petition asset which was not properly disclosed in a debtor's schedules is not deemed abandoned and remains property of an estate which can be administered if the case is reopened. 11 U.S.C. § 554(d) ("property of the estate that is not abandoned under [§ 554] and that is not administered in the case remains property of the estate"); *see In re Arboleda,* 224 B.R. 640 (Bankr.N.D.Ill. 1998); *In re Peebles,* 224 B.R. 519 (Bankr. D.Mass.1998); *In re Winburn,* 167 B.R. 673 (Bankr.N.D.Fla.1993).

■ Section 521(1) of Title 11 requires a debtor to "file a . . . schedule of assets and liabilities . . . and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). Schedule B enumerates a list of categories of assets and includes a provision for the disclosure of all "contingent and unliquidated claims of every nature." *See* Fed.R.Bankr.P. 9009; OFFICIAL BANKR. FORMS 6, SCHEDULE B, ¶ 20. Despite the Debtor's assertion to the contrary, the Debtor's wrongful death cause of action is a pre-petition asset that should have been disclosed in the Debtor's petition at the time of filing, or by amendment prior to the discharge and closing of the case. The Debtor takes the position that she did not know she had a potential claim at the time she filed her case (Affidavit of Pamela Gordon Lewis, June 1, 2001, ¶ 3 and Corrected Affidavit of Pamela Gordon Lewis, June 29, 2001, ¶ 3), and that even if she discovered a potential claim post-petition, she was under no obligation to disclose it to the trustee. However, there is no legal or factual basis for the Debtor's position. Thus, having established that the Debtor had a pre-petition asset which she failed to disclose, the question is whether the Debtor should now be permitted to reopen her case to rectify the problem.

■ In determining whether to permit a debtor to reopen her case to disclose a pre-petition asset, courts have looked at several factors: the benefit to the debtor; the prejudice to the defendant; and the benefit to other creditors. *In re Koch,* 229 B.R. 78, 85–86 (Bankr.E.D.N.Y.1999); *In re Maloy,* 195 B.R. 517, 518 (Bankr. M.D.Ga.1996); *see generally* Judge William Houston Brown, Lundy Carpenter & Donna T. Snow, *Debtor's Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums,* 75 Am.Bankr.L.J. 197 (2001).

The first two factors, it would seem, are inextricably linked. If reopening the case benefits the debtor, it necessarily prejudices the defendant; if not reopening the case benefits the defendant, it necessarily prejudices the debtor. However, the benefits and detriments are not based solely on the reopening of the case. The benefits and detriments arise from the *impact* of the court's ruling on the debtor's claim and defendant's judicial estoppel argument in state court. Put in its simplest terms, the Debtor takes the position that if her case is reopened, she may overcome the judicial estoppel argument because she is no longer advocating inconsistent legal positions. Alternatively, if the case is not reopened, she most surely will lose at the summary judgment stage because of the application of judicial estoppel by Georgia courts. *See Wolfork v. Tackett,* 273 Ga. 328, 540 S.E.2d 611 (2001). The Wrongful Death Defendants argument is, essentially, the mirror image of the Debtor's. The Wrongful Death Defendants contend that the benefit to the Debtor from reopening the case undermines, if not negates, their judicial estoppel argument.

The Wrongful Death Defendants rely on *In re Maloy* and *In re Koch* to support

their argument against reopening the Debtor's case. In *Maloy,* the Debtor omitted from his schedules a cause of action under the Fair Debt Collection Practices Act ("FDCPA"), which arose after the filing of his Chapter 13 case but prior to the conversion of the case to Chapter 7. The court found that the Debtor was aware of the FDCPA claim during his bankruptcy case and, in fact, the debtor's attorney made a settlement demand on the defendant during the bankruptcy case. After the case was closed, the debtor filed a FDCPA action in the district court in his own name. Six months after filing his lawsuit, the debtor moved to reopen his bankruptcy case, apparently to defeat the defendant's affirmative defense of judicial estoppel. The *Maloy* court denied the debtor's motion to reopen in light of the three factors set forth *supra.* The court found that because any benefit to one party results in a detriment to the other, the focus should be on "whether the detriment of reopening the case as to [defendant] would be *fairly incurred." Maloy,* 195 B.R. at 518 (emphasis added). The Court found, based on the debtor's conduct and intentions, that such a result to defendant would not be fairly incurred. Specifically, the *Maloy* court found that "Debtor and his attorney made a conscious determination to try and capitalize on the value of an asset without having previously made that asset available to his creditors in the bankruptcy case" and that the debtor's motive in reopening the case was not a desire for honest disclosure, but a desire to defeat the defendant's judicial estoppel argument. *Id.* at 519. The court also found that debtor's conduct in not disclosing the asset during his bankruptcy or at least in moving to reopen the bankruptcy case prior to filing his FDCPA action did not meet the "requisite good faith on the part of a debtor which must precede the reopening of a bankruptcy case." *Id.*

Similarly, in *In re Koch,* 229 B.R. 78 (Bankr.E.D.N.Y.1999), the court denied the debtor's motion to reopen after weighing the benefit to the debtor, the harm to defendants, and the benefit to creditors. In *Koch,* the debtor, a professional sports photographer, sought Chapter 7 relief. The Chapter 7 Trustee filed a no asset report, and the case was discharged and closed. Approximately a year and a half later, the debtor commenced a state court action against the National Basketball Association in which he sought the return of over 2,000 slides from the NBA and punitive damages. The NBA moved to dismiss the debtor's state court complaint on the ground that the debtor lacked standing in the state court action because he had lost all rights to the slides or their value when ownership of the assets passed to his bankruptcy estate. The debtor then moved to reopen his bankruptcy case to disclose the prepetition assets as property of his estate.

The *Koch* court found that the prejudice to the NBA was "abundantly clear" in that a reopening of the bankruptcy case hindered the effort to dismiss the debtor's state court action via summary judgment. *Koch,* 229 B.R. at 86. Further, the court found that the NBA had expended considerable time and expense, both in the bankruptcy court and the state court. *Id.*

As for the benefit to the debtor and the creditors from reopening the case, the Court found that, while superficially, the debtor appeared to benefit, since it would permit him to appear as plaintiff in the state court action, in actuality, "reopening the case did not benefit nor should it benefit him at all." *Id.* This, the court reasoned, was due to debtor's deceptive attempt to convert his reopened Chapter 7 case to a Chapter 11 reorganization plan. The conversion to Chapter 11 would have allowed the debtor to avoid the appoint-

ment of a trustee who could investigate and evaluate the asset, and would have "prevented the creditors from participating in any recovery." *Id.* at 87. Finally, the court found that the debtor's lack of good faith suggested "an all too casual disregard for the disclosure requirements of this Court, and the fair and equitable treatment of Koch's creditors as called for by the Bankruptcy Code, since they did not benefit from the reopening." *Id.* at 87–88. Based on these facts, the court found that reopening the debtor's bankruptcy case had not cured the "the defect that exist[ed] in the action to the extent ... that Koch neither was, nor is, a real party in interest as plaintiff in the action." *Id.* at 88.

 While the Court is mindful of the rulings in *Maloy* and *Koch,* this Court is not persuaded that a similar result, in this case, is just. As a practical matter, there are significant differences between the facts of this case and those of *Koch* and *Maloy.* In *Koch,* the court specifically found that the creditors would not benefit from reopening the case. If the instant case were reopened, a Chapter 7 Trustee would be appointed to evaluate the Debtor's claim and determine whether to pursue it or abandon it. For all intents and purposes, the claim does not belong to the Debtor, but is a pre-petition asset of her estate over which the Trustee has the final say.[1] In the *Maloy* case, the court also found that there was no potential benefit for creditors because the debtor's exemption claim would have exhausted the value of the asset. However, in the instant case, neither party has made the argument that the asset is without value to the estate.

In addition, both the *Koch* and *Maloy* courts found evidence to indicate that the debtors had deliberately omitted the pre-petition causes of action from their petitions. In *Maloy,* the court found that the debtor failed to list his claim against the defendant in either his Chapter 13 schedules or in his Chapter 7 schedules upon conversion. The court found that the debtor's bankruptcy attorney wrote a letter demanding settlement during the pendency of the debtor's case, but never amended the debtor's schedules to disclose the existence of the claim. The *Maloy* court found that the debtor and his attorney "made a conscious determination to try to capitalize on the value of an asset without having previously made that asset available to his creditors in the bankruptcy case." *Maloy,* 195 B.R. at 519. The court further found that it was the debtor's "obvious intention to realize the benefit of the asset after the bankruptcy was closed" and that such behavior did not comport with good faith. *Id.*

In *Koch,* the debtor pursued not an inchoate claim, but, instead, sought the recovery of over 2,000 photographic slides, which the debtor had provided to the NBA pursuant to an alleged verbal agreement with the NBA regarding the use of the slides. The *Koch* court stated that "it is with great difficulty that this Court can believe that the slides had no value when [the debtor] went into bankruptcy, when it is quite clear that eventually he commenced the state court action to recover from NBA millions of dollars for the slides." *Koch,* 229 B.R. at 87. The court further found that debtor's lack of disclosure of the asset in his schedules, his failure to notify the former trustee of the asset before commencement of his state

---

1. Whether the Debtor has standing to pursue her state court action against the Wrongful Death Defendants is not an issue before this Court. The Court observes, however, that a prepetition cause of action is property of the estate, and the Chapter 7 Trustee has standing exclusively to pursue it unless abandoned by the Trustee pursuant to Section 554.

court case, and the debtor's subsequent attempt to convert to Chapter 11 for the purpose of maintaining his capacity to pursue the state court action in his own name demonstrated a lack of good faith. *Id.* at 87–88.

The instant case is not as clear. There is no question that the Debtor's wrongful death cause of action was a pre-petition asset. However, the Debtor avers that she did not know at the time she filed that she had a potential lawsuit against the Wrongful Death Defendants. At some point prior to the discharge of her bankruptcy case, she retained an attorney to represent her in her lawsuit against the Wrongful Death Defendants, and she even sent a demand letter to the Wrongful Death Defendants prior to the discharge of her case. There is, however, no evidence that her bankruptcy attorney was aware of any of these occurrences. Nor is there evidence that the attorney representing her in the wrongful death suit was aware that the Debtor was in a bankruptcy case at the time he took the case. While the Debtor herself was involved in all of these activities, the Court is unwilling to assume a sinister motive on the part of the Debtor based upon circumstantial evidence. For better or worse, many debtors are quite naive about the law, especially the stringent requirements of the bankruptcy system.

Nevertheless, in spite of (or, perhaps, because of) the strict disclosure requirements of the Bankruptcy Code, both the Code and the Bankruptcy Rules allow for a great deal of flexibility in amending and modifying a debtor's schedules. *See* FED. R.BANKR.P. 1009 (debtor may amend bankruptcy schedules "as a matter of course"). Because of the flexibility built into the Bankruptcy Code and Rules, "it does not appear that the integrity of either the bankruptcy court nor the state court is undermined by allowing the Debtor to amend her bankruptcy petition to add the lawsuit as an asset." *In re Daniel,* 205 B.R. 346, 348–349 (Bankr.N.D.Ga.1997); *see also In re Griner,* 240 B.R. 432 (Bankr. S.D.Ala.1999) (citing a debtor's ability under Rule 1009 to amend schedules to include assets previously omitted).

Furthermore, a review of the *Koch* and *Maloy* cases, compared with the facts of this case, leads the Court to the realization that whether there is a benefit to the Debtor or a detriment to the Wrongful Death Defendants should not be the Court's main concern. A benefit to one necessarily results in a detriment to the other, and these benefits and detriments will arise, not in a bankruptcy forum, but, ultimately, in the state court case. Consequently, it is not this Court's role to determine the outcome of a state court proceeding, *i.e.,* whether the claim has merit or whether a judicial estoppel argument should apply. The role of this Court is to oversee the bankruptcy case and the rights, obligations, and conduct of the parties before it. From this perspective, the persuasive factor for the Court to weigh in deciding whether to reopen this case is not its effect upon the Debtor or upon the Wrongful Death Defendants in a state court forum, but rather the effect a reopening would have on the creditors of the Debtor's estate.

In *In re Daniel,* 205 B.R. 346 (Bankr. N.D.Ga.1997) (Murphy, J.), the bankruptcy court focused not on the Debtor's conduct or on the impact on the state court defendants, so much as it focused on the consequences to the bankruptcy participants, namely, the creditors. In *Daniel,* the debtor filed a motion to reopen her Chapter 7 bankruptcy case in order to add a prepetition personal injury claim arising from an automobile accident. Subsequent to the closing of the Chapter 7 case, but prior to the filing of the debtor's motion to

reopen, the debtor commenced a lawsuit in the state court. The insurance company representing the defendant in the state court action opposed the debtor's motion to reopen, arguing that reopening the case would deprive it of its judicial estoppel defense in state court. The *Daniel* court found that such a reason did not merit denial of the debtor's motion to reopen. The court found that the most important focus was on the creditors of the debtor's estate inasmuch as a "denial in the instant case of Debtor's motion to reopen would deprive Debtor's creditors of an opportunity to share in the fruits of any recovery Debtor may obtain." *Daniel*, 205 B.R. at 348. Further, the court rejected the defendant's argument that the debtor's conduct amounted to bad faith:

> In the instant case, [defendant] points only to Debtor's conduct and seeks to establish a tier of inferences that would result in the conclusion that Debtor acted fraudulently and in bad faith—more specifically, that Debtor sought to conceal her personal injury claim in order to reserve the benefit of any recovery for herself and deprive creditors of the opportunity to share in that recovery. Then, only when the success of the Lawsuit was threatened by her failure to list the asset in her bankruptcy schedules did Debtor file this motion to reopen. However, Debtor's conduct can equally be explained as honest error. Debtor now seeks to cure her earlier omission and, most significantly, intends to share the fruits of any recovery with her pre-petition creditors. Any advantage which Debtor may have gained by omitting the asset from her schedules is eliminated by reopening, amending the schedules and allowing the Chapter 7 Trustee to administer the asset.

*Daniel*, 205 B.R. at 349.

This Court agrees with the court's finding in *In re Daniel* that "[r]eopening may be detrimental to [the defendant] by de-priving it of a judicial estoppel argument[,] but this court cannot countenance depriving Debtor's creditors of the opportunity to share in damages to which Debtor is entitled in order to preserve [defendant's] judicial estoppel argument." *Daniel*, 205 B.R. at 349. The remedy for failing to disclose a pre-petition asset should not be one which punishes creditors; to this Court, such a result is absurd and undermines the purpose of the bankruptcy system. To deny reopening the case so that the Wrongful Death Defendants can pursue their judicial estoppel argument in state court is "overly harsh and inequitable[,]" because to do so results in a situation in which "[e]veryone, except [the defendant] loses." *Griner*, 240 B.R. at 439. Although the time for revoking the Debtor's discharge has expired under 11 U.S.C. § 727(e), if the evidence shows that the Debtor knowingly and intentionally omitted a prepetition asset from her schedules, the Court is quite capable of fashioning a punishment which will redress her lack of timely disclosure. *See, e.g.,* FED. R.BANKR.P. 9011; 11 U.S.C. § 105; 18 U.S.C. § 152. Nevertheless, to deny creditors the potential of recovery in order to teach the Debtor a lesson for failing to disclose her claim is a remedy which this Court will not endorse. Accordingly,

**IT IS ORDERED** that the Debtor's Motion to Reopen her bankruptcy case is **GRANTED** and the Debtor's case is **REOPENED** to permit the Debtor to amend her schedules and to permit the transaction of such other business as is permitted by Title 11 of the United States Code; and

**IT IS FURTHER ORDERED** that the former Chapter 7 Trustee shall be **REAPPOINTED**.

**IT IS SO ORDERED.**