**In the Matter of Duane A. ROCHESTER, Debtor.**

**No. 01–63424–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 6, 2004.

Ralph Goldberg, Esq., Decatur, GA, Ben C. Brodhead, Esq., Atlanta, GA, for Debtor.

Alfred B. Adams, III, Esq., John K. Rezac, Esq., Tiffani Z. Moody, Esq., Holland & Knight LLP, Atlanta, GA, for BFS Diversified Products, LLC, Firestone Building Products Company, Commercial Roofing Specialties, Inc., and CRS, Inc.

## ORDER

W. HOMER DRAKE, JR., Bankruptcy Judge.

Before the Court is the Debtor's "Motion to Reopen Chapter 7 Case," in which Duane Rochester (hereinafter the "Debtor") seeks to reopen his bankruptcy case to amend his schedules. On November 25, 2003, BFS Diversified Products, LLC, Firestone Building Products Company, Commercial Roofing Specialists, Inc., and

CRS, Inc. filed an objection to the Debtor's motion. After a hearing on December 1, 2003, the Court took the matter under advisement and requested briefs from the parties. Several other parties have also filed briefs, including Carlisle Syntec, Inc., JPS Elastomerics Corp., and Sarnafil, Inc. (collectively referred to as the "Objecting Parties"). This matter constitutes a core proceeding, see 28 U.S.C. § 157(b)(2)(A), and will be disposed of in accordance with the following reasoning.

## FINDINGS OF FACT

Prior to filing his bankruptcy case, the Debtor suffered an injury while working with roofing materials. The Debtor contends that his current respiratory problems result from exposure to toxic fumes and gases while on the job. He reported this injury to his supervisor sometime between October 6 and October 9, 2000, and filed a notice of claim with the Georgia State Board of Workers' Compensation on October 6, 2000. On December 1, 2000, Dr. Laurence Rivkin, the Debtor's treating physician, wrote an opinion letter to the Debtor's attorney in which he diagnosed the Debtor with occupational lung disease from the inhalation of toxic gases. Throughout the administrative process, the Debtor was represented by a workers' compensation attorney named Larry Hanna.

On March 15, 2001, with the assistance of bankruptcy counsel, J. Daran Burns, the Debtor commenced the present bankruptcy proceeding by filing a voluntary petition under Chapter 7 of the Bankruptcy Code. Paul W. Bonapfel (hereinafter the "Trustee") was appointed as the Chapter 7 trustee and held the first meeting of creditors on April 25, 2001. Following the meeting of creditors, the Trustee submitted a report of no distribution. The Debtor received his discharge on June 28, 2001, and,

because the estate contained no assets to be distributed, the Clerk closed the case.

On August 27, 2002, the Debtor filed a products liability claim in the State Court of Fulton County (hereinafter the "State Court Action"). In the State Court Action, the Debtor, represented by attorney Ben C. Brodhead, asserted that the roofing materials manufactured and/or distributed by the Objecting Parties caused his injury. The Debtor did not list a products liability claim against the Objecting Parties as an asset on Schedule B (Personal Property) and checked "None" on the line that requests the Debtor to disclose "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." However, the Debtor did list his monthly workers' compensation benefits of $1625 and his "workers' compensation case," to which he assigned an unknown value. Additionally, in response to the question on the Statement of Financial Affairs that requires the Debtor to list all suits pending within one year before the bankruptcy filing, the Debtor listed a workers' compensation claim against "WC Insurance Company." There is nothing in the record to suggest that the Debtor disclosed to the Trustee any intent to eventually pursue a products liability claim. At the time the Debtor's case was closed, $124,638 worth of unsecured debt remained unpaid. No evidence was submitted regarding the amount of damages that may be recovered in the State Court Action, but the Debtor contends that the recovery would be more than sufficient to pay all claims that would be filed against his bankruptcy estate.

On September 22, 2003, the Objecting Parties filed a Motion for Summary Judgment in the State Court Action, arguing that the Debtor lacked standing to prosecute the products liability claim and that

the doctrine of judicial estoppel should bar the Debtor from any recovery on his claim. On October 6, 2003, apparently in response to the Motion for Summary Judgment, the Debtor filed the instant motion, seeking to reopen his bankruptcy case for the purpose of amending his schedules to add the claim as an asset and to claim an exemption in the asset. The Objecting Parties oppose the Motion to Reopen.

## CONCLUSIONS OF LAW

### A. Section 350(b)

Section 350(b) of the Bankruptcy Code provides that the Court may reopen a closed case in order to administer assets, accord relief to the debtor, or for other cause. 11 U.S.C. § 350(b). By its reference to "cause," § 350(b) casts a broad net, and a decision in this respect thus necessarily falls within the "sound discretion of a bankruptcy court." *See In re Sheerin*, 21 B.R. 438, 439–40 (1st Cir. BAP 1982); *see also In re Daniel*, 205 B.R. 346, 348 (Bankr.N.D.Ga.1997). The Court must consider the facts presented in each case and use its discretion to determine whether cause exists to reopen a case. *See In re Koch*, 229 B.R. 78, 88 (Bankr.E.D.N.Y. 1999) ("The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case."); *In re Winebrenner*, 170 B.R. 878, 881 (Bankr.E.D.Va.1994).

More pertinent is the notion that a bankruptcy court may in fact have a duty to reopen a case in which new assets have been discovered in order to ensure that the assets are administered for the benefit of the debtor's creditors. *In re Lopez*, 283 B.R. 22, 27 (9th Cir. BAP 2002) ("[I]t is an abuse of discretion to deny a motion to reopen where 'assets of such probability, administrability, and substance' appear to exist 'as to make it unreasonable under all circumstances for the court not to deal with them.' "); *In re Mullendore*, 741 F.2d 306, 308 (10th Cir.1984).

Many courts have held that a bankruptcy court does not abuse its discretion when it reopens a closed case to administer newly-discovered assets. In fact, some courts have stated that "it is the duty of the court to reopen an estate whenever prima facie proof is made that it has not been fully administered." *Stackhouse v. Plumlee (In re Plumlee)*, 236 B.R. 606, 610 (E.D.Va.1999) (citations omitted). However, a bankruptcy court need not reopen a case when "the chance of any substantial recovery for creditors appears 'too remote to make the effort worth the risk.' " *Lopez*, 283 B.R. at 27.

In this case, *prima facie* evidence has been submitted by the Debtor that an asset of the Debtor's bankruptcy estate has not been fully administered for the benefit of the creditors. The cause of action arose prior to the Debtor's bankruptcy filing. Therefore, the claim became property of the Debtor's bankruptcy estate. *See* 11 U.S.C. § 541(a) (defining property of a debtor's estate to include "all legal or equitable interests of the debtor and property as of the commencement of the case"); *see also Barger v. City of Cartersville*, 348 F.3d 1289, 1291 (11th Cir. 2003) ("[P]roperty of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy."). The Trustee did not abandon the claim, pursuant to § 554(a) or (b), and, because the claim was not scheduled, the claim was not deemed to be abandoned under § 554(c). 11 U.S.C. § 554. A claim that is neither administered nor abandoned by the trustee remains property of the bankruptcy estate. 11 U.S.C. § 554(d). Consequently, this unscheduled, unadministered, and unabandoned claim

remains property of the Debtor's bankruptcy estate that may be administered by a trustee if the case is reopened. *See In re Lewis,* 273 B.R. 739 (Bankr.N.D.Ga.2001) (Drake, J.); *In re Arboleda,* 224 B.R. 640 (Bankr.N.D.Ill.1998); *In re Peebles,* 224 B.R. 519 (Bankr.D.Mass.1998).

As noted above, the Debtor's case was closed without the distribution of any funds to the Debtor's creditors, who were owed in excess of $120,000. Under these circumstances, a successful administration of this asset would not be futile, as any recovery would provide the creditors with such a distribution.[1] *See Lopez,* 283 B.R. at 28 ("If the case is reopened .... the chapter 7 trustee can also notify creditors to file claims ... and can make distributions on those claims out of any eventual recovery.").

█ When considering whether to reopen a bankruptcy case in the context of an undisclosed cause of action, courts have also considered the following three interests: 1) the benefit to the debtor; 2) the prejudice or detriment to the defendant in the pending litigation; and 3) the benefit to the debtor's creditors. *In re Koch,* 229 B.R. at 85–86; *In re Maloy,* 195 B.R. 517, 518 (Bankr.M.D.Ga.1996). As the Court has stated in its earlier decisions, "the final factor, the potential benefit to the creditors, would appear to be the most important factor in this analysis." *In re Tarrer,* 273 B.R. 724, 733 (Bankr.N.D.Ga.2001) (Drake, J.); *see also In re Lewis,* 273 B.R. 739 (Bankr.N.D.Ga.2001) (Drake, J). Assuming the trustee recovers on the Debtor's claim, the creditors, who are owed approximately $124,000, would receive some payment.[2] Accordingly, "[a] denial in the instant case of Debtor's motion to reopen would deprive Debtor's creditors of an opportunity to share in the fruits of any recovery Debtor may obtain." *In re Daniel,* 205 B.R. 346, 348 (Bankr.N.D.Ga.1997); *see also Lopez,* 283 B.R. at 30 n. 12 (objecting parties' loss of the judicial estoppel defense is "hardly a reason to deny creditors the opportunity to share in the proceeds of a potentially meritorious action"). "Reopening may be detrimental to [the defendant] by depriving it of a judicial estoppel argument[,] but this court cannot countenance depriving Debtor's creditors of the opportunity to share in damages to which Debtor is entitled in order to pre-

1. The Court has been presented with no evidence as to the potential success of this cause of action or the amount of damages that could be recovered. However, "the decision whether to reopen should not become a battleground for the litigation of the underlying merits." *Lopez,* 283 B.R. at 28. If the case is reopened, it is for the Chapter 7 trustee to investigate whether the asset has value. *Id.*

2. Assuming, without deciding, that the Debtor is entitled to exempt this asset, a significant portion of the recovery may not be exemptible. According to the Debtor's complaint, the Debtor seeks general and special damages, as well as punitive damages. Under Georgia law, a debtor's exemption of amounts received on account of a personal injury is limited to $10,000. O.C.G.A. § 44–13–100(a)(11)(D). At least $20,000 of the damages sought represent reimbursement of medical and health care expenses. Section 44–13–100(a)(11)(D) does not permit the exemption of amounts received on account of pain and suffering or actual pecuniary loss, which includes amounts received for property damage or medical bills. *See In re Geis,* 66 B.R. 563 (Bankr.N.D.Ga.1986) (Drake, J.). Accordingly, damages in excess of $10,000 and amounts awarded in payment of medical bills would not be exemptible under § 44–13–100(a)(11)(D) and would remain available for payment to creditors. The complaint also seeks payment of $900,000 in lost wages, which would only be exempt to the extent necessary for the support of the Debtor and his dependents. O.C.G.A. § 44–13–100(a)(11)(E). Pursuant to Bankruptcy Rule 4003(b), all parties in interest would have thirty days from the date of the amendment to object to any exemption.

serve [the defendant's] judicial estoppel argument." *Id.* at 349.

## B. *Impact of the Debtor's Conduct and the Doctrine of Judicial Estoppel*

The Objecting Parties also contend that the Debtor intentionally failed to schedule the cause of action and argue that this fact precludes the Court from reopening the bankruptcy case. In its previous decisions, the Court has not focused on whether the debtor intentionally failed to disclose the asset. While the Court has always recognized that a debtor's conduct is relevant to the question of whether the debtor should be allowed to amend the schedules to exempt any recovery, *see Doan v. Hudgins (Matter of Doan)*, 672 F.2d 831 (11th Cir.1982), unlike a request to exempt an asset, the debtor's request to *add* an asset, the liquidation of which could provide for payment to the creditors, would benefit, rather than harm, the creditors. Accordingly, it is counterintuitive that a debtor's previous failure to disclose an asset should bar the bankruptcy court from reopening the case or prevent a trustee from administering property of the estate for the benefit of the innocent creditors. If a creditor discovered that the debtor had failed to disclose a valuable piece of real property and moved the Court to reopen the case, the Court would not refuse to do so on the basis that the debtor failed to disclose the asset, even if there were a possibility that the real property could be sold and a portion of the funds returned to the debtor in accordance with § 726(a)(6). A debtor's attempt to keep assets from creditors should not preclude those same creditors from sharing in the proceeds of the concealed asset. *See Lopez*, 283 B.R. at 22 (noting that denying a motion to reopen in order to punish the debtor for failure to disclose an asset risks harming creditors); *see also In re Strickland*, 285 B.R. 537 (Bankr.S.D.Ga.2001); *In re Dewberry*, 266 B.R. 916 (Bankr.S.D.Ga.2001) ("[A] debtor's good faith or lack of good faith is irrelevant to the question of whether to reopen a case when the purpose of the reopening is for the administration of undisclosed assets of the bankruptcy estate."); *In re Hamlett*, 304 B.R. 737 (Bankr.M.D.N.C.2003).

That being said, the Objecting Parties assert that this Court's earlier analysis has been superseded by the Eleventh Circuit Court of Appeals' recent decisions on the issue of judicial estoppel. According to the Objecting Parties, under these decisions, the Court cannot reopen a bankruptcy case and allow a trustee to administer an undisclosed asset if the debtor failed to disclose the asset and had knowledge of and a motive to conceal the asset. Alternatively, the Objecting Parties contend that, even if the Court reopens the bankruptcy case, the reappointed Chapter 7 trustee would be barred from pursuing the asset, and, accordingly, "the chance of any substantial recovery for creditors appears 'too remote to make the effort worth the risk.'"

In recent years, the doctrine of judicial estoppel has been raised as a defense to various claims with increasing frequency. *See Debtor's Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums*, 75 AM. BANKR. L.J. 197 (2001). In *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the United States Supreme Court applied the doctrine to bar the State of New Hampshire from taking a different position from that taken by the state during litigation in the 1970s. The Court explained that "[u]nder the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his

interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. at 742–43, 121 S.Ct. 1808. The Court further noted that the "purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 743, 121 S.Ct. 1808. The Court outlined several factors that most courts consider when determining whether to apply judicial estoppel. First, the later position must be clearly inconsistent with the earlier position. *Id.* Second, courts consider whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* Third, courts determine whether the "party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* However, the Court noted that these factors are not "inflexible prerequisites." *Id.*

Under the Supreme Court's decision in *New Hampshire v. Maine*, the Eleventh Circuit Court of Appeals has directed courts to consider whether: 1) the party's inconsistent position in the earlier proceeding was made under oath; and 2) whether the "inconsistencies [were] calculated to make a mockery of the judicial system." *Barger v. City of Cartersville*, 348 F.3d 1289, 1293–94 (11th Cir.2003) (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir.2001)). In a case in which the earlier statement is alleged to have been made by a debtor in his or her bankruptcy schedules, the first factor is easily met, as these documents must be signed under penalty of perjury. The sec-

ond factor is met when it is clear that the debtor deliberately or intentionally manipulated the court. *Id.* at 1294. "[D]eliberate or intentional manipulation can be inferred from the record," when the debtor has knowledge of the undisclosed claims and has motive for concealment. *Id.* (citing *Burnes*, 291 F.3d at 1287). However, as the court noted in *Parker v. Wendy's International, Inc.*, "[a]lthough these factors, when present, can create an inference of intent, . . . they create only an inference and are not conclusive proof of intent." *Parker v. Wendy's International, Inc.*, 2003 WL 23350445 (11th Cir. Mar. 31, 2004). Accordingly, the court must consider whether "[t]he other circumstances of the case may negate that inference." *Id.* ("[S]imply asking whether there was knowledge and motive to conceal, without considering all of the other circumstances of the case . . . [is] error.").

The Eleventh Circuit Court of Appeals has on three occasions affirmed orders in which a district court granted summary judgment to a defendant or dismissed the plaintiff's case on the basis that the plaintiff's failure to disclose the cause of action during a bankruptcy case judicially estopped the plaintiff from pursuing the claim. *See Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir.2003); *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289 (11th Cir.2003); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002). The court has not yet addressed the issue of whether a bankruptcy court must conduct a judicial estoppel analysis before reopening a case to allow a trustee to administer an undisclosed asset. Nonetheless, these decisions indicate that the Court of Appeals does not look favorably upon such motions. *See Barger*, 348 F.3d at 1297 ("Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good

light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds."); *Burnes*, 291 F.3d at 1288 ("Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets."). At least two bankruptcy courts have presumed that, under *Burnes, De Leon,* and *Barger,* before reopening a bankruptcy case, the court should first determine whether the debtor is judicially estopped from pursuing the cause of action. *See In re Huggins,* 305 B.R. 63 (Bankr.N.D.Ala.2003); *In re Haskett,* 297 B.R. 637 (Bankr.N.D.Ala. 2003).

Other courts have concluded that the issue of whether judicial estoppel bars a claim is for the court in which the claim is pending to decide. *See In re Dewberry,* 266 B.R. 916, 920–21 (Bankr.S.D.Ga.2001) ("It seems self-evident that if the principle is invoked to protect the integrity of the judiciary, then it must be invoked in the Court in which the apparent self-serving contradiction occurred and in which the defense is first asserted."); *see also In re Lott,* 277 B.R. 871, 874 (Bankr.S.D.Ga. 2001) ("[T]he impact on a judicial estoppel defense should not be the basis of a bankruptcy court's decision of whether or not to reopen a bankruptcy case because the conflicting assertion did not occur in the bankruptcy court."); *In re Lopez,* 283 B.R. 22, 30 (9th Cir. BAP 2002) ("We express no opinion whether any such judicial estoppel would bar [the debtor] or her chapter 7 trustee from prosecuting the Action for

the benefit of creditors, or from recovering anything from [the defendant] above some limit, such as what it would take to pay creditors in full. These are matters for that court to decide, and for a chapter 7 trustee to consider."). This Court has also held that the issue of judicial estoppel is not before the bankruptcy court on a motion to reopen the case and should be deferred to the court in which the claim is pending. *See In re Tarrer,* 273 B.R. 724, 732 (Bankr.N.D.Ga.2001) (Drake, J.); *In re Lewis,* 273 B.R. 739 (Bankr.N.D.Ga. 2001) (Drake, J.); *see also In re Barger,* 279 B.R. 900 (Bankr.N.D.Ga.2002) (Bonapfel, J.) ("Whether the doctrine of judicial estoppel is applicable to preclude assertion of the claim appears to be a question for the tribunal in which the claim is being asserted.").

However, the Court of Appeals' decisions in *Burnes, De Leon,* and *Barger* suggest that a bankruptcy court, in order to achieve the policy goal of encouraging full disclosure in the bankruptcy process, should not reopen a bankruptcy case for the purpose of administering an undisclosed cause of action if it is clear that the debtor intentionally failed to disclose the asset. *See De Leon,* 321 F.3d at 1292 ("'The success of our bankruptcy laws requires a debtor's full honest disclosure. Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.'"). Additionally, as the Objecting Parties have pointed out, if the court in which the cause of action is pending would also find that the claim is barred by judicial estoppel, reopening the bankruptcy case would not result in any recovery to the creditors of the estate and would be a waste of judicial resources.

■ Accordingly, this Court will consider whether the Debtor intentionally failed to disclose the cause of action to this Court. If not, the Court will also consider whether the state court in which the cause of action is pending would, nonetheless, apply judicial estoppel to bar the Debtor and the trustee from pursuing the claim. Finally, the Court will address the Objecting Parties' alternative contention that the state court would dismiss the claim on procedural grounds.

■ As noted above, the Eleventh Circuit Court of Appeals has considered the impact of a debtor's failure to disclose a cause of action in bankruptcy schedules on four separate occasions. In *Burnes,* the debtor filed a Chapter 13 bankruptcy petition in July 1997. *Burnes,* 291 F.3d at 1284. Six months later, the debtor filed a discrimination charge with the EEOC against his employer. Almost one year later, but while his bankruptcy remained pending, the debtor filed an employment discrimination suit against his employer in federal district court. The debtor did not amend his bankruptcy schedules or statement of financial affairs to include this lawsuit. In October of 2000, the debtor converted his bankruptcy case from Chapter 13 to Chapter 7. At that time, the debtor filed new, updated schedules, but failed to include the discrimination lawsuit on his amended schedules. In January 2001, the debtor received a "no asset" discharge of over $38,000 of debt. Neither the Chapter 7 trustee, nor any of the debtor's creditors knew about the lawsuit. The defendant employer moved for summary judgment in the district court on the basis of judicial estoppel, and the district court granted the motion, concluding that judicial estoppel barred the debtor from pursuing his claims. *Id.* The debtor appealed the district court's decision.

The Court of Appeals stated that the doctrine of judicial estoppel precludes a party from " 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding' and that the doctrine is 'an equitable concept intended to prevent the perversion of the judicial process' " and " 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " *Id.* at 1285. To determine whether the debtor's conduct warranted the application of this doctrine, the court considered two factors: 1) whether the "the allegedly inconsistent positions were made under oath in a prior proceeding"; and 2) whether the inconsistencies were " 'calculated to make a mockery of the judicial system.' " *Id.* The court found that the first prong of the analysis had been satisfied because the debtor had signed his bankruptcy schedules and statement of financial affairs under oath. *Id.* at 1286.

As to the debtor's intent to make a mockery of the judicial system, the court rejected the debtor's contentions that his failure to schedule the cause of action was inadvertent error. *Id.* Although the court recognized that judicial estoppel should not be applied if the inconsistencies are the result of " 'a good faith mistake rather than ... part of a scheme to mislead the court,' " the court determined that a " 'debtor's failure to satisfy [his] statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.' " *Id.* at 1287 (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co. et al.,* 81 F.3d 355, 362–63 (3d Cir.1996); *In re Coastal Plains, Inc.,* 179 F.3d 197, 210 (5th Cir.1999)). The court held that the debtor had clearly demonstrated his knowledge of the undisclosed cause of action because he

had filed the discrimination lawsuit during the pendency of his Chapter 13 case and continued to pursue the claim at the time he converted the case to Chapter 7. The court also concluded that the debtor had a motive to conceal the cause of action because he probably would not have received a "no asset" discharge of his debts if the trustee, the bankruptcy court, and his creditors had known about the cause of action. Accordingly, the court held that the district court had not erred in determining that the debtor was judicially estopped from pursuing the cause of action.

In *Barger*, the debtor filed a discrimination charge with the EEOC, which issued the debtor a right-to-sue-letter in June 2001. The debtor filed suit in July 2001, seeking to be reinstated to a higher-paying position, from which she had been demoted. In September 2001, the debtor filed a petition under Chapter 7 of the Bankruptcy Code. In her schedules and statement of financial affairs, the debtor stated that she had not been a party to any suit or administrative proceeding in the year preceding her petition and did not list the discrimination suit as an asset. At about the same time the debtor filed her bankruptcy petition, the debtor's attorney attempted to negotiate a settlement, through which the debtor would benefit by being allowed to retire two years early. The defendant apparently rejected the settlement proposal, and, approximately three months later, the debtor sought to amend her complaint to add a claim for compensatory damages. The day after the district court granted the debtor leave to amend her complaint, the debtor attended her first meeting of creditors. The debtor told her bankruptcy counsel and the bankruptcy trustee about the discrimination suit at the creditors meeting. However, she apparently told the trustee that she was only seeking reinstatement and not monetary damages. During the course of discovery,

the defendants in the discrimination suit served the debtor with an interrogatory that asked the debtor to list any legal proceeding to which she was or had been a party, but the debtor did not inform the defendants of her pending bankruptcy petition. In January 2002, the bankruptcy court granted the debtor a "no asset" discharge of her debts, which totaled $58,664. In February 2002, in response to the defendant's discovery requests, the debtor produced a copy of the discharge order. Upon learning of the bankruptcy, the defendant filed a motion for summary judgment on the basis of judicial estoppel. *Id.* at 1291. The debtor moved the bankruptcy court to reopen the bankruptcy case and reappoint the Chapter 7 trustee. *Id.* at 1292. Although the bankruptcy court reopened the case, the district court granted the defendant's motion for summary judgment after determining that the debtor was judicially estopped, and, alternatively, lacked standing to pursue the claim. *Id.* The debtor appealed the district court's grant of summary judgment.

The Court of Appeals reiterated the court's previously adopted analysis. In Barger's case, the court concluded that the first prong of the *Burnes* test had been met because the debtor signed her bankruptcy schedules under oath. *Id.* at 1294. As to the issue of whether the inconsistent statement had been intentional, the court found sufficient evidence in the record to conclude that the debtor had intentionally failed to disclose the asset. First, the debtor had already filed her discrimination suit at the time she filed her bankruptcy schedules, but did not list the suit in her schedules or her statement of financial affairs. Accordingly, she clearly had knowledge of the cause of action. Second, the court rejected the debtor's contention that the fact that she told her bankruptcy counsel about the lawsuit, and it was he who

failed to list the asset on the schedules, should "militate against a finding of intentional manipulation." *Id.* at 1295. The court first found that the debtor was bound by the conduct of her attorney, and second that the failure to list the claim could only be considered inadvertent if the debtor lacked either knowledge of the claim or motive to conceal the claim. *Id.* at 1296. The court had already determined that the debtor knew about the claim, and further concluded that the debtor had sufficient motive to conceal the claim because, by concealing the claim, she could have kept the proceeds for herself. *Id.* Additionally, the court appeared to be further persuaded by the fact that, although the debtor had amended her complaint only days earlier to add a claim for monetary damages, she specifically told the trustee that she only intended to seek reinstatement of her position. *Id.*

Finally, in *Parker v. Wendy's International, Inc.,* No. 02–16185, 2003 WL 23350445 (11th Cir. Mar.31, 2004), the Court of Appeals reversed the district court's dismissal of the debtor's case on judicial estoppel grounds after concluding that the record did not support a finding that the debtor had intentionally failed to disclose a cause of action. In *Parker,* the debtor filed an employment discrimination suit in January 1999. *Id.* at *1. Just over two years later, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The debtor did not schedule the discrimination suit as an asset. The debtor received her "no asset" discharge in May 2001. Prior to the trial on the debtor's discrimination claim, the debtor's attorney requested a continuance to allow the debtor time to advise the former Chapter 7 trustee of the existence of the cause of action and allow the trustee an opportunity to move the bankruptcy court to reopen the debtor's bankruptcy case. The trustee successfully petitioned the bank-ruptcy court to reopen the case to allow for his reappointment. The trustee also intervened in the discrimination suit. *Id.* Following the trustee's intervention, the defendant moved to dismiss the discrimination claims, and argued that the debtor was estopped from pursuing the claims because she failed to disclose the claim, she had knowledge of the claim, and she had a motive to conceal the claim. The district court dismissed the case, after finding that the case was factually and procedurally indistinguishable from *Burnes,* and, accordingly, the debtor must be judicially estopped. *Id.* at *2. The trustee moved for reconsideration of the motion to dismiss, arguing that the case was distinguishable from *Burnes* because the trustee was acting on behalf of the creditors of the estate, as opposed to the debtor acting on her own behalf, as was the case in *Burnes.* Additionally, the trustee argued that the debtor had voluntarily informed the trustee of the lawsuit, unlike the debtor in *Burnes,* who had only sought to amend his bankruptcy schedules after the defendant had moved for summary judgment. Nonetheless, the district court denied the trustee's motion for reconsideration, after finding that the distinctions between the two cases were "not determinative." *Id.*

On appeal, the Court of Appeals first addressed the trustee's argument that he should not be judicially estopped from pursuing the undisclosed cause of action because he had not made any inconsistent statements to the bankruptcy court or the district court. The court rejected this argument, holding that "because general bankruptcy law requires that the trustee in bankruptcy does not have any more rights than the debtor has[,]" the trustee "cannot reach more assets than the debtor can." *Id.* at *3. Presumably, the court reasoned that the trustee assumed the

debtor's cause of action as it existed at the time the debtor filed her bankruptcy petition, and, if the debtor had already engaged in conduct that would have barred her from pursuing the cause of action, that conduct would be imputed to the trustee. Accordingly, the court concluded that the trustee was bound by the inconsistent statements made by the debtor and the first prong of the test was met.

However, the court disagreed with the district court's conclusion that the second prong of the test—that the inconsistent statement was " 'calculated to make a mockery of the judicial system,' "—had been satisfied. The court found that the district court erred in concluding that the debtor's inconsistent statement was intentional, rather than inadvertent. *Id.* at *4. Although the court acknowledged that such an intent can be inferred from the record, even in cases in which the debtor has knowledge of the claim and a motive to conceal it, "other circumstances of the case may negate that inference." *Id.* The court considered the timing of the events, which indicated that the debtor's omission of her claim was inadvertent. Specifically, the court found *Parker* distinguishable from the *Burnes* case because, in *Burnes,* the debtor did not attempt to disclose the claim to the bankruptcy court until after the defendant in the lawsuit moved for summary judgment on the basis of judicial estoppel. In *Parker,* the debtor informed the former trustee of the cause of action "as soon as she realized it was relevant to the bankruptcy proceeding and before [the defendant] moved to dismiss." From this fact, the court concluded that, if the debtor had intended to manipulate the court by failing to disclose the asset, she would have "tried to settle with [the defendant] quietly, keeping her no asset discharge and all of the settlement proceeds." *Id.*

Finally, the court appeared to be persuaded by the fact that the doctrine of judicial estoppel is "an equitable concept." The court stated that "equity favors allowing the trustee to pursue Parker's discrimination claim for three reasons:" 1) the debtor's omission was not intentional and was not in bad faith; 2) barring the trustee from pursuing the claim would punish the debtor's innocent creditors; and 3) allowing the trustee to pursue the claim will not necessarily result in rewarding the debtor's failure to disclose the claim because the "bankruptcy court may choose to sanction Parker for her omission by revocation of her discharge, or other actions." *Id.* at *5.

In this case, the Court is not persuaded that the Debtor's conduct warrants imposition of the harsh doctrine of judicial estoppel. Here, the Debtor's injury manifested itself at some point prior to October 6, 2000. At that time, the Debtor reported his injury to his employer. He also sought redress for this injury by hiring a workers' compensation attorney and filing a workers' compensation claim. In December 2000, the Debtor was diagnosed with occupational lung disease. By March 2001, the Debtor found it necessary to file for bankruptcy protection. At that time, it is clear that the Debtor had knowledge of his injury, as he listed both his workers' compensation benefits and his potential claim against the workers' compensation insurance carrier in his bankruptcy schedules and statement of financial affairs. However, it is not clear that the Debtor realized that this injury could also be the basis for an additional cause of action, such as a products liability suit. Presumably, the Trustee would not have been interested in pursuing the Debtor's workers' compensation benefits because these amounts would have been exempt. In this respect, the instant case is similar to the *Barger* case. In *Barger,* the debtor's original complaint

only sought reinstatement of her position, a remedy that would not have provided a benefit to the debtor's estate and would not have interested the Chapter 7 trustee. However, unlike the debtor in *Barger*, there is no evidence that the Debtor had any intent at the time of the first meeting of creditors to pursue a products liability claim or even realized that such a possibility existed. In *Barger*, just days before the first meeting of creditors, the debtor had amended her complaint to claim compensatory damages, yet told the Chapter 7 trustee that she was only seeking reinstatement. Under those facts, the Court of Appeals determined that the debtor had deceived the trustee. However, in this case, there is no evidence to suggest that the Debtor knew of any potential products liability claim. Further, it would seem to the Court that, if the Debtor knew he had a product's liability claim, he would not have disclosed any of the facts underlying his injury because doing so may have alerted the trustee that the Debtor possessed such a claim. Under these circumstances, the Court concludes that it is far more likely that, at the time the Debtor filed his petition, he simply did not recognize that he had a products liability claim against the manufacturers and distributors of the roofing materials.

This conclusion is supported by an affidavit filed by the Debtor in which he states that the first time he heard any mention of a products liability claim was in about July 2001, when his workers' compensation attorney, Larry Hanna, suggested that he speak with an attorney named Ben Brodhead about his case. [Affidavit of Duane Rochester (hereinafter "Rochester Affidavit"), ¶ 10]. Additionally, Brodhead filed an affidavit in which he avers that he was not aware of the Debtor's products liability case until July 2002. [Affidavit of Ben Brodhead (hereinafter "Brodhead Affidavit"), ¶ 4]. At that time,

Brodhead suggested to Hanna that, in addition to his workers' compensation claim, the Debtor may also have a products liability claim against the Objecting Parties and decided to take the Debtor's case. [*Id.*]. The date of this contact between the Debtor's two attorneys was well after the Debtor completed his bankruptcy schedules and filed his petition and over one year after the Debtor received his discharge and his case was closed. Brodhead also stated that, when he began working with the Debtor on his products liability case, the Debtor had no idea what a products liability claim was or that he could sue the Objecting Parties for his injuries. [*Id.*]. Finally, the Debtor's bankruptcy counsel, J. Daran Burns, avers that when he asked the Debtor whether he had any pending or potential lawsuits, the Debtor told him about his workers' compensation case. [Affidavit of J. Daran Burns, ¶ 4 (hereinafter "Burns Affidavit")]. Although Burns knew about the facts underlying the Debtor's workers' compensation case, he states that he did not realize that the Debtor might have an additional claim for damages arising from these facts. [*Id.* ¶ 5]. Accordingly, Burns never advised the Debtor to list any additional cause of action as an asset and states that he has no reason to believe that the Debtor would have realized the existence of such a cause of action. [*Id.*]. These affidavits support the Court's conclusion that neither the Debtor nor his attorneys knew that the Debtor possessed a products liability claim against the Objecting Parties at the time the Debtor filed his bankruptcy petition and schedules.

The Objecting Parties have also argued that the Debtor's failure to reopen his bankruptcy case immediately after learning of the products liability claim satisfies both prongs of the *Burnes* test. First, the Objecting Parties submit that the Debtor's

filing of the State Court Action is irrefutable proof that he knew about the products liability claim, yet he failed to reopen his bankruptcy case to submit the asset to the control of the Court and the Trustee. Second, the Objecting Parties contend that the Debtor had a clear motive to conceal the claim.

The Court agrees that the Debtor had knowledge of the products liability claim at the time he filed the State Court Action. Additionally, it is clear that the Debtor had a motive to conceal the cause of action because, if he had reopened the bankruptcy case and disclosed the claim, he would have had to share the proceeds of any recovery with his creditors. Accordingly, under *Burnes,* the Court could infer that the Debtor's failure to correct his inconsistent statement was not inadvertent. However, under the Court of Appeals' decision in *Parker,* the Court may consider additional factors in the case that would tend to negate this inference and can conclude that, notwithstanding the Debtor's knowledge of and motive to conceal the claim, the Debtor did not intentionally conceal the claim.

There is sufficient evidence in this case to support the conclusion that the Debtor's failure to reopen his bankruptcy case was not the result of his desire to conceal the cause of action, but rather the result of the fact that the Debtor did not know that he was obligated to reopen the bankruptcy case. The Debtor's affidavit states that he learned of the products liability claim in July 2002, over one year after he had received his discharge and his bankruptcy case had been closed. [Rochester Affidavit, ¶ 10]. At that time, he states, he did not know that he had any "obligation, responsibility, or even any ability to re-open" his bankruptcy case. [*Id.*]. He also states that, had he known of his duty to reopen the case and inform the Court of the asset,

he would have done so. [*Id.* ¶ 12]. Brodhead also states that he did not advise the Debtor of his obligation to reopen the case because he did not know that the Debtor had filed bankruptcy until September 2003 when the Objecting Parties raised the judicial estoppel argument. [Brodhead Affidavit, ¶ 5]. Further, he avers that his conversations with the Debtor gave him no reason to believe that the Debtor was aware of his obligation to reopen the bankruptcy case. [*Id.*].

The Court recognizes that debtors have a continuing obligation to amend bankruptcy schedules when their financial circumstances change. *See Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1286 (11th Cir. 2002); *In re Coastal Plains, Inc.,* 179 F.3d 197 (5th Cir.1999) (" 'The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed.' "). That being said, the question of whether the Debtor had a duty to disclose and whether he was aware of this duty are distinct. For the Debtor to have intended to manipulate the judicial system for his own benefit by failing to reopen his bankruptcy case to disclose his products liability claim, the Debtor must have known that he had a duty to do so. The Debtor has submitted affidavits indicating that he did not know that he was required to disclose the asset to the Court until the Objecting Parties filed their motions to dismiss the State Court Action. The Objecting Parties have presented no contradictory evidence, but merely point to the fact that the Debtor had a clear motive to keep the matter secret. Admittedly, had the Debtor known that any recovery from the State Court Action could be used to satisfy his pre-petition debt, the Debtor would have had sufficient motive to conceal

the asset from the Court and his pre-petition creditors. However, this motive, without more, does not persuade the Court that the Debtor was aware that the asset should have been and could have been made available to his pre-petition creditors. At the time the Debtor was advised to file a products liability claim, his bankruptcy case had been closed for over a year, and there is no evidence to suggest that the Debtor, a lay person, realized that the claim was in fact a pre-petition asset that continued to belong to his bankruptcy estate. In *Parker*, the Court of Appeals was persuaded that the debtor had not intentionally failed to disclose the asset by the fact that she informed the former trustee of the cause of action "as soon as she realized it was relevant to the bankruptcy proceeding and before [the defendant] moved to dismiss." The Court recognizes that, in this case, the Debtor did not move to reopen the bankruptcy case prior to the filing of a motion to dismiss. However, under these circumstances, the Court finds that the Debtor did move the bankruptcy court as soon as he realized that the lawsuit should have been disclosed to the Court. Accordingly, the Court cannot conclude that the Debtor's failure to reopen the bankruptcy case at the time he filed the State Court Action was "calculated to make a mockery of the judicial system."

Finally, as the Court of Appeals noted in *Parker*, the Court is also mindful of the fact that the doctrine of judicial estoppel is an equitable doctrine. As did the court in *Parker*, this Court finds that "equity favors allowing the trustee to pursue [the Debtor's] claim for three reasons:" 1) the debtor's omission was not intentional and was not in bad faith; 2) barring the trustee from pursuing the claim would punish the debtor's innocent creditors; and 3) allowing the trustee to pursue the claim will not necessarily result in rewarding the debtor's failure to disclose the claim be-cause this Court could "choose to sanction [the Debtor] for [his] omission by revocation of [his] discharge, or other actions." *Parker*, 2003 WL 23350445 at *5. As the court noted, in the event that further proceedings in this Court or in the State Court Action suggest that the Debtor intentionally failed to disclose his claim against the Objecting Parties, this Court can fashion an appropriate remedy to ensure that the Debtor does not retain any unfair advantage. In that manner, the Court can fulfill its duty of protecting creditors' property rights and achieve one of the fundamental purposes of the Bankruptcy Code, while at the same time ensuring that debtors and other parties who come before the bankruptcy courts are encouraged to provide the courts with the full and honest disclosure that is crucial to the bankruptcy courts' ability to protect the rights and interests of all parties.

## C. The State Court's Application of Judicial Estoppel

As to the Objecting Parties' argument that reopening the bankruptcy case would be futile because the state court would apply judicial estoppel in any event, the Court notes that the application of judicial estoppel in this context is by no means uniform. As is the case here, the court in which the undisclosed action is pending may not be bound by Eleventh Circuit precedent. When faced with the issue of whether to apply judicial estoppel against the Chapter 7 trustee or the debtor, the state court may refuse to apply judicial estoppel on the basis that the trustee has taken no inconsistent positions. Additionally, under Georgia precedent, even if the state court found that the Debtor had intentionally concealed the cause of action from this Court, it is probable that the state court would decline to apply judicial

estoppel against the debtor because the required elements would be lacking.

Georgia courts have held that "judicial estoppel does not apply when a plaintiff has successfully amended her [bankruptcy] petition to include any claim against the defendant as a potential asset." *Cochran v. Emory University,* 251 Ga.App. 737, 555 S.E.2d 96, 98–99 (2001). Amending the bankruptcy schedules to add the cause of action effectively nullifies the original position taken in the bankruptcy case, and therefore, the initial failure to list the asset cannot serve as the basis upon which the second court applies the doctrine of judicial estoppel. *See Johnson v. Trust Co. Bank,* 223 Ga.App. 650, 478 S.E.2d 629 (1996) ("Due to the bankruptcy court's decision to reopen the Chapter 7 case and its acceptance of the amendment to the schedules plaintiff filed with that court, it also cannot be said that plaintiff's present position in the trial court is 'inconsistent with one successfully and unequivocally asserted by [him] in a prior proceeding.' "); *Wolfork v. Tackett,* 241 Ga.App. 633, 526 S.E.2d 436, 438 (1999), *aff'd,* 273 Ga. 328, 540 S.E.2d 611 (2001); *see also Jowers v. Arthur,* 245 Ga.App. 68, 537 S.E.2d 200, 202 (2000) ("We have since reiterated that amending the bankruptcy petition to include the claim, even after the bankruptcy case was closed, precludes judicial estoppel from barring the claim."); *Dillard–Winecoff, LLC v. IBF Participating Income,* 250 Ga.App. 602, 552 S.E.2d 523 (2001). Additionally, any improper advantage the debtor gained by failing to disclose the asset is eliminated when the debtor reopens the bankruptcy case and relinquishes control over the asset and its potential proceeds to a trustee. *Rowan v. George H. Green Oil Co.,* 257 Ga.App. 774, 572 S.E.2d 338 (2002). Therefore, under Georgia precedent, once this Court has reopened the bankruptcy case to allow a trustee to pursue the cause of action, the

state court would probably find that the reopening of the case has eliminated at least two of the requisite elements of judicial estoppel.

### D. Impact of the Expiration of the Statute of Limitations

Finally, the Objecting Parties argue that reopening the case to allow a trustee to pursue this asset would be futile because the statute of limitations for this cause of action has expired. The Objecting Parties contend that, even if the trustee were substituted as the real party in interest, the trustee would be barred by the statute of limitations from pursuing the claim and that the doctrine of relation back would not apply.

Under Georgia law, "[e]very action shall be prosecuted in the name of the real party in interest." O.C.G.A. § 9–11–17(a). "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." *Id.* Once a plaintiff discovers that the cause of action is not being prosecuted in the name of the real party in interest, the plaintiff "has standing to seek, in the trial court, the substitution of such [party] as the real party in interest." *Dover Place Apartments v. A & M Plumbing & Heating,* 255 Ga. 27, 335 S.E.2d 113, 114 (1985). "If leave is sought to change or add plaintiffs after the expiration of the statute of limitation, provided 'the claim ... asserted in the amended [complaint] arises out of the conduct, transaction, or occurrence set forth or at-

tempted to be set forth in the original [complaint], the amendment relates back to the date of the original [complaint].'" *Morris v. Chewning*, 201 Ga.App. 658, 411 S.E.2d 891, 892 (1991) (quoting O.C.G.A. § 9–11–15(c)). "Additionally, for relation back to occur in such circumstances, there must be such an identity of interest between the old and new parties that relation back will not prejudice the defendant, and there must have been no unexcused delay or laches prejudicial to the defendant." *Id.* (internal citations omitted). However, if the defendant has been on "notice of the conduct and occurrence upon which the new complaint arose .... delay is not enough to warrant the denial of such a motion." *Id.* at 893. Finally, when considering a motion to substitute a plaintiff and whether the substitution relates back to the filing of the original complaint, Georgia courts have been instructed to construe the Civil Practice Act liberally in order to ameliorate the impact of the statute of limitations. *Id.* at 892.

 As outlined above, once the Debtor's bankruptcy case is reopened to permit the reappointment of a Chapter 7 trustee, the trustee could move the state court for joinder as a plaintiff or for substitution as the real party in interest. The trustee would represent the Debtor's bankruptcy estate, which is the true owner of the cause of action being asserted in the State Court Action. The issue of whether the statute of limitations would bar the trustee from pursuing the claim depends upon whether the state court finds that doing so would unduly prejudice the Objecting Parties or that the trustee's failure to act earlier is unexcused. The Court cannot predict the state court's decision with certainty. However, the state court would likely consider the fact that the interests of the bankruptcy estate in prosecuting this claim remained unrepresented from the time the Debtor's bankruptcy case was closed until the time this Court reopened the case and reappointed a trustee. The state court would also consider the fact that the Objecting Parties have been on notice as to the nature of the claim since the State Court Action was filed and the nature of that claim would not be impacted by the substitution of the trustee. Additionally, the court would construe the statute liberally in favor of "ameliorating the impact of the statute of limitations." For purposes of determining whether to reopen the case and allow a trustee to investigate the claim, the Court finds that there is a sufficient likelihood that the state court would conclude that a trustee is not barred by the expiration of the statute of limitations. Consequently, the expiration of the statute of limitations should not render the reopening of the bankruptcy case futile or a waste of judicial resources.

### CONCLUSION

Having carefully considered the matter, the Court finds that the Debtor's conduct does not warrant the application of judicial estoppel to bar a Chapter 7 trustee from pursuing the State Court Action and that cause exists to reopen the Debtor's bankruptcy estate. Accordingly,

**IT IS ORDERED** that the Debtor's Motion to Reopen his bankruptcy case is **GRANTED**.

The Debtor's case is **REOPENED** to permit the transaction of such business as is permitted by Title 11 of the United States Code; and

**IT IS FURTHER ORDERED** that a Chapter 7 Trustee shall be **APPOINTED**.

**IT IS FURTHER ORDERED** that the Debtor is allowed ten (10) days within which to file amended schedules and statement of affairs and to serve any such amendment upon the trustee, the credi-

tors, and other parties in interest in this case. The Trustee and any other party with standing to do so shall have thirty (30) days from the filing of any amended schedules or statement of affairs within which to object to any exemption claimed by the Debtor in any assets added by Debtor in his amended schedules and statement of affairs.

**IT IS SO ORDERED.**